## ISNER v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. October 20, 1925.)

No. 2349.

1. **Intoxicating liquors ⬤ ⟩134—Conviction for manufacturing nonintoxicating cider and fruit juices cannot be had, except beverage manufactured be in fact intoxicating.**

Under National Prohibition Act, tit. 2, § 29 (Comp. St. Ann. Supp. 1923, § 10138½p), exempting from operation of act person "manufacturing nonintoxicating cider and fruit juices exclusively for use in his home," conviction cannot be had for manufacturing cider or fruit juices containing more than one-half of 1 per cent. alcohol, except on showing such beverage is in fact intoxicating.

2. **Intoxicating liquors ⬤ ⟩236(13)—Evidence held insufficient to sustain conviction for manufacturing intoxicating liquor.**

Evidence showing manufacture of fruit juice beverage having more than one-half of 1 per cent. alcohol *held* insufficient to sustain conviction for manufacturing intoxicating liquor.

In Error to the District Court of the United States for the Northern District of West Virginia, at Elkins; William E. Baker, Judge.

Creed Isner was convicted of manufacturing intoxicating liquor, and he brings error. Reversed.

A. M. Cunningham, of Elkins, W. Va., for plaintiff in error.

T. A. Brown, U. S. Atty., of Parkersburg, W. Va. (Russell L. Furbee, Asst. U. S. Atty., of Parkersburg, W. Va., on the brief), for the United States.

Before WADDILL and ROSE, Circuit Judges, and WEBB, District Judge.

WEBB, District Judge. [1, 2] The defendant, Creed Isner, was indicted and convicted for unlawfully possessing "intoxicating liquor, to wit, 70 gallons of grape wine."

The main facts on the trial below showed that the defendant had a quantity of wild cherries and elderberries, and made an effort to get from the state authorities a permit to make wine of them. The berries were grown on his own farm. He put them into a barrel and strained out the berries, having added about two gallons of water to one gallon of juice. Having failed to secure a permit, he placed the barrel containing the juice and water in an outside cellar, where state police officers found it. The contents of the barrels were not destroyed by the officers, but pint samples were taken from said barrels. There is much disputed testimony

as to whether or not this concoction was fit for beverage purposes; a number of witnesses saying it was so bitter that it could not be drunk, and others saying that it tasted like wine. The pint samples were analyzed, but the record does not show the alcoholic content.

The defendant offered to show that the liquid was not intoxicating, but objection to this evidence was sustained by the trial court. There is no evidence that this concoction was made for the purpose of being sold, but for home consumption, if it was ever fit to be used for such.

In his brief, T. A. Brown, Esq., United States attorney, says:

"In order that the question may be settled squarely on the construction of the last clause of section 29 (of the Volstead Act), the government concedes here and now that the said wine was not, as a matter of fact, intoxicating."

The government insists that the defendant is guilty, because the jury found from the opinion of the police officers that the concoction contained as much as one-half of 1 per cent. alcohol, and contended that this concoction or beverage, although not intoxicating, comes under the general prohibition in the act defining liquor, and that the defendant is subject to the pains and penalties prescribed generally in the act. This brings us squarely to the interpretation of the last clause of section 29 of title 2 of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½p), which is as follows:

"The penalties provided in this act against the manufacture of liquor without a permit shall not apply to a person for manufacturing nonintoxicating cider and fruit juices exclusively for use in his home, but such cider and fruit juices shall not be sold or delivered except to persons having permits to manufacture vinegar."

We were interested in the argument of the government brief in this case, but are forced to the conclusion that, whatever Congress may have meant by inserting the above clause in the Prohibition Act, we are bound to consider and accept the plain language of it. We are forced to the conclusion that Congress intended to take out of the general class of intoxicating liquors nonintoxicating ciders and fruit juices made by one to be used exclusively in his home, and therefore put nonintoxicating vinegar and such fruit juices in a different class, and required that, before a person can be convicted under the act for manufacturing such vinegar and

fruit juices, same must be proved by the government to be in fact intoxicating.

We therefore hold that in all such cases it is necessary to prove that such vinegar and fruit juices are in fact intoxicating before a conviction can be had.

This view of this section is unanimously held by the court, and, as the writer of this opinion was a member of the lower house of Congress when this act was passed, he can say without doubt that the foregoing construction of this section was the intent and meaning of Congress. This provision now under consideration was not a part of the bill as it passed the House of Representatives, but was inserted in the Senate after a number of speeches had been made by persons complaining that the "grandmother and housewife" were going to be "penalized and made criminals" if they made blackberry cordials or blackberry wines for use in their own home. In order to meet such objection on the part of such critics of the bill, this provision was agreed upon and inserted in the Senate after a conference of members and Senators deeply interested in the passage of the act and the success of prohibition. A different interpretation than this one placed upon the act would be to totally disregard the plain language of the Congress, which inserted this provision in the Volstead Act for the purpose of making a different rule for conviction of persons who make nonintoxicating vinegar and fruit juices exclusively for their home uses.

The judgment of the court below is therefore reversed.

Reversed.