## UNITED STATES v. PICALAS.

District Court, N. D. West Virginia. July 10, 1928.

1. **Intoxicating liquors** ⟨⟩223(3)—**Alcoholic contents or fitness for use as beverage need not be alleged or proven in prosecution for manufacturing or possession of wine (National Prohibition Act, tit. 2, § 1 [27 USCA §§ 4, 5]).**

In prosecution under National Prohibition Act for manufacture and possession of wine, it is unnecessary either to allege or prove alcoholic contents or fitness for use as beverage or intoxicating character of such beverage, as wine is one of the prohibited beverages enumerated by title 2, § 1 (27 USCA §§ 4, 5), defining intoxicating liquor.

2. **Statutes** ⟨⟩205—**Each section and paragraph of act must be read together and construed in light of the other.**

In the construction of any act, it must be taken by four corners, and each section and paragraph thereof read together and construed in light of the other.

3. **Criminal law** ⟨⟩304(20)—**Courts will judicially notice that whisky, alcohol, and other well-known intoxicants are intoxicating, without proof of alcoholic contents.**

Courts will judicially notice that whisky, alcohol, brandy, gin, wine, and other well-known intoxicants are intoxicating liquor, without proof of alcoholic contents.

4. **Intoxicating liquors** ⟨⟩139—**Possession in private home of wine containing 5 per cent. of alcohol by volume held illegal (National Prohibition Act, tit. 2, §§ 1, 29 [27 USCA §§ 4, 5, 46]).**

Possession in private home of wine containing 5 per cent. of alcohol by volume, being fit for beverage purposes, as defined by National Prohibition Act, tit. 2, § 1 (27 USCA §§ 4, 5), *held* unlawful, notwithstanding section 29 (27 USCA § 46) thereof, providing that penalties shall not apply to manufacturing nonintoxicating cider and fruit juices exclusively for use in one's home; there being nothing in such section indicating purpose to use words "intoxicating liquor" in different sense than adopted and set out in section 1 (27 USCA §§ 4, 5).

At Law. Sam Picalas was convicted for unlawful possession of liquor. On motion by defendant to set aside verdict and for a new trial. Motion overruled.

Arthur Arnold, U. S. Atty., of Piedmont, W. Va., and Russell L. Furbee, Asst. U. S. Atty., of Fairmont, W. Va.

John B. Wyatt, of Clarksburg, W. Va., for defendant.

BAKER, District Judge. The information in this case, filed on the 12th day of April, 1927, charges that the defendant, Sam Picalas, on or about the 6th day of January, 1927, in the county of Harrison, Northern district of West Virginia, did unlawfully and knowingly possess for beverage purposes a large quantity, to wit, 60 gallons, of intoxicating liquor commonly called *elderberry wine*, the same containing more than one-half of 1 per centum of alcohol by volume, and being then and there fit for use for beverage purposes, contrary to the act of Congress commonly known as National Prohibition Act (27 USCA).

On the 9th day of July, 1928, the defendant was convicted as charged in the information. This case was tried upon an agreed statement of facts prepared by counsel for the government and for the defendant, and duly signed by them, after which it was read to the jury in lieu of the production of witnesses. The agreed statement of facts is as follows:

"It is agreed that the defendant, Sam Picalas, is a resident and citizen of the United States of America; that at the time of the commission of the alleged offense charged in said information he was, and still is, a coal miner, and now and for some years prior hereto, has resided in his own home and upon his own property, consisting of about 5 acres of land improved with a frame dwelling and outhouses, near the village of Wyatt, in Harrison county, W. Va.; that on or about the month of January, 1927, deputy sheriffs of Harrison county, armed with search warrant legally and regularly issued by a justice of the peace of said Harrison county, searched the home and premises of the said Sam Picalas, situate as aforesaid, and therein and thereon found 60 gallons of wine made from elderberries grown and gathered upon the said premises of defendant and adjacent properties of others, during the year 1926, and, at the time of said search and seizure of said wine, the same contained more than one-half of 1 per centum of alcohol by volume, to wit, 5 per centum by volume, and then and there fit for use for beverage purposes as defined by section 1 of title 2 of the National Prohibition Act [27 USCA §§ 4, 5]; that said Sam Picalas had made and stored said wine in his said home and on his said premises exclusively for use in his said home."

By the stipulation of facts, the defend-

ant admits that he manufactured and possessed sixty gallons of elderberry wine containing 5 per cent. of alcohol by volume, and that it was fit for beverage purposes.

Section 1, tit. 2, of the Volstead Act, title 27, § 4, USCA provides:

"When used in this title * * * the word *liquor* or the phrase *intoxicating liquor* shall be construed to include alcohol, brandy, whisky, rum, gin, beer, ale, porter, and wine, and in addition thereto, any spirituous, *vinous,* malt, or fermented liquor, liquids, and compounds, whether medicated, proprietary, patented, or not, and by whatever name called, containing one-half of one per centum or more of alcohol by volume which are fit for use for beverage purposes."

Section 3, tit. 2, of the Volstead Act, title 27, § 12, USCA, provides:

"No person shall manufacture, sell, barter, transport, import, export, deliver, furnish or *possess* any intoxicating liquor except as authorized in this chapter, *and all the provisions of this chapter shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented."*

Title 2, § 29, of the Volstead Act, title 27, § 46, USCA, provides the punishment for the unlawful manufacture, sale, *possession* or transportation of liquor. The last paragraph of this section provides as follows:

"The penalties provided in this chapter against the manufacture of liquor without a permit shall not apply to a person for manufacturing *nonintoxicating cider* and *fruit juices* exclusively for use in his home, but such cider and fruit juices shall not be sold or delivered except to persons having permits to manufacture vinegar."

It will be noted that by the stipulation of facts in this case the defendant admits he manufactured and possessed 60 gallons of elderberry wine containing 5 per cent. alcohol by volume, and that it was fit for beverage purposes.

[1] In prosecutions for manufacturing or *possession of wine* it is unnecessary either to allege or prove the alcoholic contents or fitness for use as beverage or the intoxicating character of such beverage, as wine is one of the prohibited beverages enumerated by the National Prohibition Act (title 2, § 1) defining intoxicating liquor.

*Wine* and the other beverages specifically named in the statute were well-known articles of commerce in common use, and needed no further description in the act. The government in this case charged, not only that the beverage was *wine,* but that it con-

tained more than one-half of 1 per cent. by volume of alcohol. That it might do as a matter of precaution, but it was not bound to prove only that it was wine and that it contained the prohibited percentage of alcohol, to wit, more than one-half of 1 per cent. of alcohol by volume, and that it was fit for beverage purposes. Strada v. U. S., 281 F. 143 (C. C. A.); U. S. v. McGuire, 300 F. 98 (D. C.); Singer v. U. S., 278 F. 415 (C. C. A.); U. S. v. Auto City Brewing Co., 279 F. 132 (D. C.); Hensberg v. U. S., 288 F. 370 (C. C. A.).

It is contended by counsel for the defendant that the latter clause of section 29, tit. 2, of the Volstead Act (title 27, § 46, USCA), to wit, "The penalties provided in this chapter against the manufacture of liquor without a permit shall not apply to a person for manufacturing. *nonintoxicating cider and fruit juices* exclusively for use in his home, but such cider and fruit juices shall not be sold or delivered except, * * *" etc., exempts the defendant from guilt under the stipulation of facts and the law in this case. They go into the history and purposes of the act and attempt to read into the Volstead Act as passed what the legislators had in their mind at the time of its passage.

[2] This case cannot be equitably decided by looking to the last paragraph of section 29 alone. In the construction of any act it must be taken by the four corners, and every section and paragraph thereof read together, and each construed in the light of the other.

Section 1, tit. 2, of the National Prohibition Act defines intoxicating liquor as including "alcohol, brandy, whisky, rum, gin, beer, ale, porter, and *wine,* and in addition thereto any spirituous, vinous, malt, or fermented liquor, liquids, and compounds * * * by whatever name called, containing one-half of one per centum or more of alcohol by volume which are fit for use for beverage purposes."

[3] It has been so often held as to render citations of authorities unnecessary that, upon the coming in of proof of the sale of whisky, alcohol, brandy, gin, wine, and other well-known intoxicants, courts will judicially notice that such liquids are intoxicating liquor without proof of their alcoholic contents. Berry v. U. S., 275 F. 680 (C. C. A.).

[4] It is urged by the defendant that the last paragraph of section 29, wherein it is provided that the penalties of the Volstead Act shall not apply to manufacturing nonintoxicating cider and fruit juices exclusively for use in one's home, relieves the defend-

ant from this charge. I can find nothing in section 29 or any other part of the Volstead Act which indicates a purpose to use the words "intoxicating liquor" in any different sense from the definition adopted and set out in section 1, tit. 2.

Since intoxicating liquors are thus defined, it follows as surely as day follows night that, to be *nonintoxicating* within the meaning of any of the provisions of this act, a beverage must not be one of the liquids specifically prohibited by section 1, tit. 2. Section 1 of this Volstead Act is just as much a part of the act as section 29 or any other section or paragraph in it.

It is clear to my mind that, by embracing the last paragraph of section 29 in the act, Congress permitted only the manufacture of sweet cider or fruit juices in the home, to be used exclusively in home consumption, and provides only against the sale of such articles because the sale of apparently innocent fruit juices could be used as a cloak for the secret manufacture and sale of intoxicating wines or liquors and make the detection thereof the most difficult.

Reference has been made by counsel for the defendant to Isner v. U. S., decided by the Fourth Circuit Court of Appeals October 20, 1925, 8 F.(2d) 487, but a careful study of the Isner Case differentiates it from this case. In the Isner Case there was much disputed testimony as to whether or not the concoction was wine, or whether it was fit for beverage purposes. A number of witnesses claimed it was so bitter it could not be drunk; others saying merely that it tasted like wine. In this case it is admitted to be wine and fit for beverage purposes by the stipulation of facts.

In the Isner Case, the district attorney conceded on behalf of the government that the concoction in question as a matter of fact was not intoxicating, and the only evidence of its alcoholic contents was the opinion of government witnesses that it contained as much as one-half of 1 per cent. of alcohol by volume. In this case it is conceded that the wine in question contained 5 per cent. of alcohol by volume. In the Isner Case it might have been—probably must have been—presumed that the liquid was *intoxicating* in fact, if it contained more than one-half of 1 per cent. of alcohol by volume; but, whatever the conclusion of the witnesses as to the alcoholic content, the district attorney on behalf of the government destroyed utterly the possibility of any presumption of its intoxicating qualities and the force of the testimony as to possible alcoholic

content, by admitting for the government that the liquid in question was nonintoxicating in fact. As the liquid then in question was a fruit juice, and by the admissions of the district attorney taken out of the classification of wine or other liquids described in section 1 of title 2, and as it was admitted to have been made and possessed solely for use in the home, and admitted to be nonintoxicating, it was brought by the admissions of the government so clearly under the provisions of the last paragraph of section 29 that the court could do nothing else than hold that it was within said paragraph of section 29, and therefore innocently possessed, and that the defendant could not be convicted.

For the reasons hereinbefore set out, the motion to set aside the verdict of the jury and grant a new trial is overruled.