485 P.2d 600

**STATE of Arizona, Appellee,**

v.

**Jose D. MARTINEZ, Appellant.**

**No. 1 CA–CR 286.**

Court of Appeals of Arizona,
Division 1.

June 7, 1971.

Rehearing Denied July 14, 1971.
Review Denied Sept. 28, 1971.

Gary K. Nelson, Atty. Gen., by James D. Winter, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Anne Kappes, Deputy Public Defender, Phoenix, for appellant.

HOWARD, Judge.

Defendant was convicted by a jury for violation of A.R.S. § 36–1002, possession of a narcotic, in the Superior Court of Maricopa County, Arizona. Defendant now appeals that conviction.

The facts are as follows. On September 18, 1968, several officers from the Phoenix Police Department drove into a certain service station in Phoenix armed with a search warrant. The warrant authorized a search of the service station as well as of one Guadalupe Barrientes and one "Shorty" who later turned out to be a man named Ruben Ramirez.

The officers pulled into the station and up to a gasoline pump. Defendant, hereinafter referred to as appellant, approached the car as though he were going to serve them. One of the officers ordered gas and appellant went to the pump and placed the nozzle in the tank. At this point one of the officers stepped from the car and stated that he was a policeman and did not want gasoline but rather to talk to appellant.

One of the six officers in the car testified that as appellant approached the car he observed him carrying a paper matchbook tucked between his fingers and extending outwards. It was stated that the matchbook was extended toward the driver's window. It was further stated that appellant still had the matchbook in his hand as he went to the pump and removed the nozzle. After the officers informed appellant that they were police and the nozzle was replaced on the pump, the matchbook was no longer seen in appellant's hand.

One officer "frisked" appellant and then searched the area around the pump. Directly under the hose at the pump a matchbook was found.

The matchbook the officer claims to have seen in the first instance had one corner torn off so that the interior of it was visible. The matchbook found under the pump also had one corner torn from it. Interwoven between the matches was a paper packet containing a brownish powder. A field test was performed on the powder which test showed a positive indication for heroin.

At trial, an expert witness for the state testified that the powder in the packet contained an amount of heroin which could be used in the form and condition in which he found it.

The jury returned a verdict of guilty. Appellant's assignments of error will be considered in the order they are set out in his brief.

Appellant claims the evidence was not sufficient to show that the allegedly possessed heroin was present in a sufficient quantity to be useable. It is the law in this State that to sustain a conviction for possession of narcotics, the person must be in possession of a quantity of the drug such as to be useable as a narcotic under known practices of addicts. A.R.S. § 36–1002. State v. Quinones, 105 Ariz. 380, 465 P.2d 360 (1970); State v. Moreno, 92 Ariz. 116, 374 P.2d 872 (1962); State v. Urias, 8 Ariz.App. 319, 446 P.2d 18 (1968).

Apparently appellant feels that since the expert witness could not testify as to how much heroin it would take to produce a drug effect on a person, he did not give sufficient testimony as to what constitutes a "useable" amount.

We feel that the effects of drugs are obviously idiosyncratic. That is, it is virtually impossible to be able to say, with any degree of certainty, what quantity of a certain drug would be required to produce a drug effect, because it would vary greatly among different persons.

It has been held that only in those cases where the amount is incapable of being put to any effective use will the evidence be insufficient to support a conviction. State v. Moreno, supra. In *Moreno* a conviction for possession of .2 milligrams was upheld because there was testimony that this was a "useable" amount.

The following testimony was given by the State's expert witness:

"Q. Do you have an opinion, sir, as to whether or not that heroin can be effectively used?

A. I do.

Q. What is that opinion?

A. That it can be in that form and condition.

Q. Upon what do you base that opinion?

A. The form and condition and nature of packaging of the heroin in State's Exhibit 1–A"

\* \* \* \* \* \*

"Q What percentage of the substance were these two foreign—were these two other?

A The heroin was there in 10 to 20 percent of the total weight of the material. The procaine, I didn't run a rough quanta on that, it would be a guesstimate, if you wish an expression—as an expression of the procaine content.

Q What percent of this amount of the substance would it be necessary to be heroin in order to be an amount useable by a narcotics user?

A   In this form and condition most any percentage will be encountered in papers of heroin. The lowest I have seen submitted in the Phoenix area to me, in our laboratory, has been one percent heroin in a paper.

Q   When you say it would be encountered,—but certainly, one per cent, it wouldn't be a useable amount, would you say?

A   Sure, one percent papers are sold and transacted and used."

*   *   *   *   *   *

We believe a jury may find a "useable" amount such that it can arrive at a verdict of guilty by the conclusionary statement, as in this case, that the exhibit does contain such an amount. We therefore see no need and the law does not require a showing of what amount will create a certain effect.

Appellant's next assignment of error is that the matchbook containing the powder was obtained by means of an illegal search because there was no probable cause to arrest the defendant and search him.

Assuming arguendo that there was no probable cause to arrest the defendant, his contention is still without merit since the seizure of the matchbook was the result of a valid search warrant and not a product of the search of defendant's person.

Appellant's third assigned error is that the evidence was insufficient to show that he had knowledge of the nature of the substance he possessed.

It is axiomatic that intent or knowledge may be inferred from the circumstances surrounding a person's behavior or action. We feel the testimony that appellant was carrying the matchbook with a torn corner and a visible packet inside, that he had it at the pump where moments later it was found, and contained heroin, is sufficient circumstantial evidence for the jury to have inferred that appellant had knowledge of the contents of the matchbook.

The judgment is affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.