**Frederick L. PAYNE, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 6095.**

District of Columbia Court of Appeals.

Argued April 5, 1972.

Decided Aug. 25, 1972.

Jay S. Weiss, Washington, D. C., appointed by this court, for appellant.

Joseph F. McSorley, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Peter C. Schaumber, Asst. U. S. Attys., were on the brief, for appellee.

Before REILLY, Chief Judge, and PAIR and YEAGLEY, Associate Judges.

REILLY, Chief Judge:

This is an appeal from a conviction on a charge of possessing marijuana in violation of D.C.Code 1967, § 33–402. Appellant waived a jury, and at the end of the Government's case moved for a judgment of acquittal which was denied. The only question before this court is whether sufficient evidence had been adduced to justify this ruling.

The principal witness for the Government was a park policeman whose testimony may be summarized as follows:

While on duty one night last summer in an outdoor amphitheater in Rock Creek Park, he smelled what he thought was marijuana and observed two individuals smoking and passing between them, a cigarette. As the officer approached the pair,

one of them disappeared into the crowd and the other—appellant here—discarded the butt of the cigarette and also a brown envelope. The officer retrieved both objects, discovered that the envelope contained an unspecified quantity of some leafy substance with seeds, and that the remains of the cigarette—burned down to an inch and a half—contained a similar substance and appeared to have been loosely handwrapped.

After arresting appellant and taking him to headquarters, the officer—and a colleague not produced as a witness—performed a preliminary field test on the contents of the cigarette stub and envelope. This consisted of putting the substance into a tube and adding a chemical ingredient called duquenois. The substance tested then gave off a "faint violet" color.

The only other Government witness was a Metropolitan Police officer classified as a plainclothes narcotics investigator. It was stipulated that he was qualified to testify as an expert. He testified that the test used by the park policeman involved application of the duquenois ingredients to the material under scrutiny and if marijuana was present, a purple color emerged. He conceded that a second part of the field test had not been utilized, *viz.*, adding chloroform to the mixture. When this is done, a purple liquid rises to the top of the container if a substantial amount of marijuana is present. It was his opinion that where this phenomenon occurred (*i. e.,* the chloroform sinking to the bottom and the color rising to the top), there was only one chance in a hundred that the test result was in error. He also alluded to a more elaborate technique employed by professional chemists which enabled them through certain mechanical devices to undertake a quantitative analysis of the substance to determine the weight or relative amount of marijuana present.

█ No evidence, however, was offered to show that in this instance the substance had ever been examined or tested by a professional chemist. Contrary to the customary practice in trials for narcotics possession, no chemist was called to the stand nor were the seized items introduced as exhibits at the trial. While the Government in its answering brief concedes that this was a deviation from usual prosecution procedure, it contends that this void in the record did not render its case fatally defective. We are inclined to agree, although there is some authority to the contrary.[1] It is fundamental that in passing upon a motion for acquittal, the trial judge must "assume the truth of the Government's evidence and give the Government the benefit of all legitimate inferences to be drawn therefrom", Curley v. United States, 81 U.S.App.D.C. 389, 392, 160 F.2d 229, 232, cert. denied, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947). This record does contain evidence—the distinctive odor of the smoke and the color emerging from the duquenois test[2]—from which the trier of fact could have concluded that at least one of the ingredients in the cigarette stub and the contents of the envelope was marijuana.

█ We think that there is merit, however, in appellant's contention with respect to a failure of proof on the issue of possession of a usable quantity of the forbidden narcotic. While there is a conflict of authority among state courts as to whether any appreciable quantity is essential to a

---

1. In People v. Pippin, 16 A.D.2d 635, 227 N.Y.S.2d 164 (1962), the quantity of heroin seized was so small that all of it was consumed before trial in being tested by the prosecution. This may have been what happened in this case. In any event, the New York court, inferring that the amount of narcotic substance found on defendant must have been minute, reversed the conviction.

2. We are not impressed with the "expert" opinion that the sharing of a single cigarette by two persons usually means that such persons are smoking marijuana. The sight of two friends puffing on the last tobacco cigarette in their possession when a tobacconist is not immediately accessible is a commonplace.

conviction for violating statutes forbidding the possession of narcotics or intoxicating liquors, this court has adopted the view prevailing in jurisdictions which have answered this question in the affirmative. In Edelin v. United States, D.C.App., 227 A.2d 395 (1967), where the prosecution was based on traces of heroin found in a syringe, we reversed a conviction, stating that "[i]f this substance cannot be sold, if it cannot be administered or dispensed, common sense dictates that it is not such a narcotic as contemplated by Congress to be a danger to society, the possession of which is proscribed." *Id.* at 398–399.

This decision cites with approval—*inter alia*—Pelham v. State, 164 Tex.Cr.R. 226, 298 S.W.2d 171 (1957), where a conviction for illegal possession of marijuana was reversed. In that case a traffic officer in following an automobile which had gone through a red light detected the odor of marijuana smoke, and upon overtaking the car found a small quantity of marijuana seed and dustings on the back seat. The court relied on its own rationale in a prior case relating to a cotton wad containing heroin, Greer v. State, 163 Tex.Cr.R. 377, 292 S.W.2d 122 (1956).

Our approach in *Edelin* also seems to be in accord with Henson v. State, 25 Ala.App. 118, 141 So. 718 (1932),[3] where it was decided that it was never the intention of the Alabama legislature to make possession of a teaspoonful of whiskey a violation of

law. Of course, it may be argued that in this case because the park policeman had observed appellant smoking the cigarette—the discarded stub of which was later analyzed—such cigarette constituted a usable quantity.

In view of the common practice of marijuana smokers to mix the weed with different substances, such as oregano or other herbs, it does not follow that appellant possessed a usable quantity of marijuana *per se* within the doctrine of the *Edelin* and *Henson* opinions. We doubt that the Alabama court would have reached a different result had the culprit in that case diluted his teaspoonful of whiskey with sufficient water so as to have constituted a drinkable glassful.

An examination of the testimony shows that contrary to the Government's contention, no quantitative analysis[4] of the seized items was made. Thus the record is lacking in any proof of the existence of a usable quantity of the proscribed drug. The court arrived at its contrary conclusion by adverting to testimony that a test that would be correct 99 times in a hundred was sufficient, overlooking the fact that the witness in making this estimate of probability was referring not to the technique applied by the park policeman but to the chloroform test which was never utilized. Accordingly we are persuaded that the motion for acquittal should have been granted.

Reversed.

3. *See* Schraeder v. Sears, 192 Iowa 604, 185 N.W. 110 (1921), and Isner v. United States, 8 F.2d 487 (4th Cir. 1925).

4. The expert witness, when cross-examined about a chemist's test, answered affirmatively the question of whether "[t]he chemist report would show whether it was a useable quantity?" [As we have pointed out, however, there was no evidence of any such report.] The witness was then asked to concede that even a positive result on a field test would not show " . . . whether this was a useable quantity or not. . . . " He replied:
"Well, you would have an indication by the strength of the color." (Tr. 26) Significantly, the expert did not testify that the color, described as "pale violet," emerging from the only test applied provided any clue as to quantity.