Michael A. MOORE, Appellant,

v.

UNITED STATES, Appellee.

No. 8958.

District of Columbia Court of Appeals.

Argued Dec. 4, 1975.

Decided May 10, 1977.

David J. Schmit, Washington, D.C., appointed by the court, for appellant.

Jonathan B. Marks, Asst. U.S. Atty., Washington, D.C., with whom Earl J. Silbert, U.S. Atty., and John A. Terry and Daniel A. DeRose, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEBEKER, YEAGLEY and MACK, Associate Judges.

MACK, Associate Judge:

Appellant seeks reversal of his conviction for possession of marijuana on the ground of insufficient evidence, challenging as legally inconclusive the expert testimony introduced by the government. We affirm.

I.

In the course of a search incident to his arrest on an outstanding bench warrant, appellant was found in possession of two small envelopes, one containing eleven cigarette butts weighing 360 milligrams and the other containing green plant-like material weighing 1350 milligrams. He was found guilty in a nonjury trial of violating D.C. Code 1973, § 33–402,[1] and subsequently sentenced. This appeal followed.

At trial, had before the court, the government presented two witnesses—the arresting officer, and Mr. Paul Morgan, an employee of the Drug Enforcement Administration, who was qualified after extensive voir dire (and over the objection of the defense as to his expertise in botany and plant taxonomy) as an expert in analytical chemistry. He testified that the seized substance was, in his opinion, unadulterated marijuana, and he based his opinion on the microscopic examination, Duquenois-Levine test and two thin-layer chromatographies which he performed.[2] At the close of the

---

1. D.C.Code 1973, § 33–402(a), provides that:
   It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, or compound any narcotic drug, except as authorized in this chapter.
   According to § 33–401, cannabis is a "narcotic drug."

2. A positive reaction to the chemical analyses indicates the presence of THC (tetrahydrocannabinol), the psychopharmacologically active constituent of marijuana which produces the "high." In the Duquenois test, the plant sample is placed on a white spot plate, and a solution of vanillin, acetaldehyde and alcohol is added, followed by a few drops of concentrated hydrochloric acid. A deep blue-violet color is produced by marijuana. The Levine modification consists of adding chloroform to the blue-violet mixture; if the violet color moves to the chloroform layer it is considered "positive."

   In thin-layer chromatography, the substance is spotted on the edge of a plastic or glass plate coated with a silica gel. Then a solvent is added, to flow over the plate, either by capillary action or gravity. The various constitu-

government's evidence, the defense did not move for judgment of acquittal but presented its witness, Dr. Sorrell Schwartz, a professor of pharmacology at the Georgetown University Medical School with impressive credentials. He testified that all the tests .performed by the government's analyst were screening tests and even in conjunction with one another could not specifically identify marijuana.

At the close of all the evidence, the defense renewed its motion to strike all of the government analyst's testimony concerning the microscopic (botanical) examination and made two motions for a judgment of acquittal, based upon a lack of proof of a usable quantity, and the government's fail-

ure to prove the substance in question was of the particular species "*Cannabis sativa* L." All three motions were denied.[3]

## II.

Appellant has asked this court to rule as a matter of law that positive results in a microscopic examination, a Duquenois-Levine test, and a thin-layer chromatography are insufficient to establish beyond a reasonable doubt that a particular substance is marijuana and, therefore, there was insufficient evidence to support his conviction. Appellant bases this argument on testimony[4] of the defense expert witness to

ents of the substance will theoretically have different affinities to the silica gel and the solvent, and will be carried by the solvent at varying rates and distances as the solvent traverses the plate. These constituent parts will end up as "spots." The distance travelled by a constituent compound divided by the distance travelled by the solvent is the compound's "Rf" number. In the instant case, the substance was placed on the plate next to a known standard, and the movement of each was compared. No reference to Rf number is needed in this method; if the movement of the two compounds is similar, the test is considered positive.

In the microscopic examination, the government's analyst identified cystolith hairs (characteristic of cannabis and other plants) and then confirmed the presence of cystoliths by testing for calcium carbonate.

3. Appellant has not pressed the last argument on appeal. The issue has been resolved against him; see *United States v. Johnson*, D.C.App., 333 A.2d 393 (1975), in which we held that in proscribing "*Cannabis sativa* L.," Congress intended to ban the use of cannabis generally, not just one species.

4. In their briefs and oral argument before this court, counsel for both sides exhibited extensive knowledge of the scientific and technical issues involved in this case and particularly in discussing the merits of the government's tests, buttressed their arguments by references to scientific journals and studies which were not part of the record below. The references became pertinent in light of appellant's suggestion (in reliance on *Frye v. United States*, 54 App.D.C. 46, 293 F. 1013 (1923)) that the three tests must be discarded as not probative in that they no longer have general acceptance in their particular field. With respect to accuracy in the identification of marijuana, the parties have cited, *inter alia*, the following authorities: As-

sociation of Official Analytical Chemists, Official Methods of Analysis (1975); A. S. Curry, Advances in Forensic and Clinical Toxicology (1973); Farmilo, Davis, Vandenheuvel & Lane, Studies in the Chemical Analysis of Marijuana, Biogenesis, Paper Chromatography, and Country of Origin (U. N. Sec., ST/SOA/SER No. 7, 1962); Finkle, *Forensic Toxicology of Drug Abuse: A Status Report*, 44 Analytical Chem. 18 (1972); Fochtman & Winek, *A Note on the Duquenois-Levine Test for Marijuana*, 4 Clin. Toxicology 287 (1971); Fullerton & Kurzman, *The Identification and Misidentification of Marijuana*, 3 Contemp.Drug Prob.Q. 291 (1974); Nakamura, *Forensic Aspects of Cystolith Hairs of Cannabis and Other Plants*, 52 J. Ass'n of Official Analytical Chemists 5 (1969); Nakamura & Thornton, *The Forensic Identification of Marijuana: Some Questions and Answers*, 1 J.Pol.Sci. & Admin. 102 (1973); Nelson & May, The Identification of Cannabis (U. N. Sec., ST/SOA/SER No. 19, 1969); Pitt, Hendron & Hsia, *The Specificity of the Duquenois Color Test for Marijuana and Hashish*, 17 J.Forens. Sci. 693 (1972); Smith, *A Brief Note on the Response of Some Essential Oils and Extracts of Vegetable Origin to the Duquenois-Levine Test for Cannabis*, 14 J.Forens.Sci.Soc. 191 (1974); Stein, Laessig & Indriksons, *An Evaluation of Drug Testing Procedures Used by Forensic Laboratories and the Qualifications of their Analysts*, Wis.L.Rev. 727 (1973); Thornton & Nakamura, *The Identification of Marijuana*, 12 J.Forens.Sci.Soc. 461 (1972). While we agree that the government must be mindful of new scientific techniques, our very cursory exposure to such authorities leads us to believe that the challenged tests still have such standing and recognition among scientists as to be admissible. We appreciate the efforts of counsel in this regard.

the effect that the tests performed by the government analyst were screening tests only, and not specific for marijuana; i. e., that the government's tests cannot conclusively show that a substance is marijuana, but only if it is not. Dr. Schwartz recommended mass spectroscopy as a relatively simple and inexpensive test which is specific; this test is not performed by the government presently. The government analyst agreed in his testimony that the Duquenois-Levine test is a screening test; he was not asked to characterize thin-layer chromatography. The government's position on appeal is that regardless of how the tests are characterized, in combination with one another they establish with certainty that a substance is marijuana.

Appellant relies for support on dicta from State v. Wind, 60 Wis.2d 267, 208 N.W.2d 357, 361 (1973):

> An expert opinion that the substance is probably marijuana even if the test used is not exclusive is probative and admissible, but standing alone is not sufficient to meet the burden of proving the identity of the substance beyond a reasonable doubt. If this were a possession case, the tests would be insufficient.

This dictum does not suggest reversal here. There is no question that the government expert's testimony was both admissible and probative. Moreover, as in Wind, supra 208 N.W.2d at 361, "we have other facts which particularize and support the opinion of the expert"—namely, the general appearance of the substance in the one bag, and its presence in the form of cigarette butts in the other.[5] This evidence is sufficient to establish beyond a reasonable doubt that appellant possessed marijuana.[6]

## III.

■ Appellant also cites as reversible error the trial court's denial of his motions to strike Mr. Morgan's testimony regarding his microscopic examination. Appellant argued at trial (and on appeal) that as an analytical chemist, Mr. Morgan was not qualified to testify to the presence of cystolith hairs and the absence of any foreign adulterating substances. According to appellant, only a botanist is qualified to testify to such matters. We do not agree.

Mr. Morgan was employed by the Drug Enforcement Administration as a chemist, whose job it was to analyze seized substances and to testify in court as to his findings. He had a Bachelor of Science (B.S.) degree in chemistry; he had received six months of on-the-job training in the analysis of narcotics, approximately one-half of which was devoted to marijuana; he had received further training in the microscopic analysis of plant substances in a course at the Bureau of Narcotics and Dangerous Drugs; and, at the time of trial, had performed over five hundred analyses and qualified thirty-nine times as an analytical chemistry expert in the Superior Court. The government was willing to stipulate that the witness was not a "botanist" nor qualified to testify "in the classification of plant taxonomy."

The decision as to an expert witness' qualifications is one left to the trial court's discretion, reviewable only for abuse. McCormick, Evidence § 13 at 30 (2d ed. 1972). We find no abuse of discretion here. While Mr. Morgan was clearly not a botanist, he was, we think, by virtue of his specialized training and experience, fully qualified to answer the narrow questions addressed to him concerning his microscopic examination. His qualifications satisfied the threshold requirement that "the witness must have sufficient skill, knowledge, or

---

5. The trial court stated: "[E]ven though I am not satisfied with his testimony to support specific identification of this substance, nevertheless, when you have this weed of this general chemical treatment, and testing under the microscopes, and other methods the combination of all four things the appearance of the substance itself and the three tests, it seems to me it is sufficient . . . .."

6. In the alternative, appellant asks that we hold that even if the tests can establish identity (which he concedes), the manner in which the tests were utilized here compels a finding that proof failed as a matter of law. We reject this argument also, in view of the evidence admitted in this case.

experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." *Id.* As the trial judge observed, "The mere fact that he has expertise in analytical chemistry . . . does not mean that he has not learned how to tell when he had a certain plant under the microscope." Appellant's objections to the expert's qualifications in this case were pertinent to the weight to be accorded the testimony, but did not bar its admission.

## IV.

■ Lastly, appellant claims that his motion for judgment of acquittal should have been granted due to failure by the government to prove that he had possession of a "usable" amount. *Cf. Payne v. United States*, D.C.App., 294 A.2d 501 (1972); *Edelin v. United States*, D.C.App., 227 A.2d 395 (1967). Specifically, he argues that because the government failed to perform any quantitative tests to measure the amount of THC present in the seized substance, it is possible that the substance was "cut," and contained only a negligible trace of THC, even though a total of roughly 1/16 of an ounce was seized.

This court recently addressed the issue of whether "usable" amount refers to THC specifically or to the proscribed plant substance as a whole. In *Blakeney v. United States*, D.C.App., 366 A.2d 447, 449 (1976), we observed that:

Although we have held that where possession of marijuana is charged the government must prove the presence of THC to establish that the seized substance is from the portion of the plant proscribed by statute, we have not stepped beyond the holding in *Edelin* to require that the government directly prove the seized substance's ability to produce a meaningful narcotic influence upon the user by evidence quantifying the presence of its active agents. To the contrary, we have reviewed the government's quantitative evidence in cases of this kind solely to determine whether the record allowed a conclusion that the sub-

stance itself was present in a 'usable amount.' [Footnote omitted.]

Thus the strength of purity of the substance is of no consequence, so long as it is identifiable as marijuana, contains THC, and consists of more than a mere trace. Appellant's argument must be rejected.

The conviction is

*Affirmed.*

Separate Opinion by NEBEKER, Associate Judge, concurred in by YEAGLEY, Associate Judge:

■ We agree that the evidence was sufficient to sustain conviction but we believe that the tests performed by the government's expert were, standing alone, sufficient to prove beyond a reasonable doubt that the seized substance was marijuana. We concur in other aspects of Judge Mack's opinion and to that extent it is the opinion of the court. This opinion speaks for the court on the sufficiency of evidence point.

Although appellant's stance on the issue at trial was unclear, he now concedes in his reply brief that the tests used by the government chemist, if properly performed, can identify marijuana beyond a reasonable doubt. Reply Brief for Appellant at 1–2. It thus becomes evident that appellant's attack focused upon the manner in which the government's expert conducted the tests and not upon the inherent validity of those types of tests. Essentially, then, appellant's argument deals with the weight to be accorded to the testimony of the government's expert and is properly addressed to the finder of fact. Accordingly, the issue on appeal is the narrow one of whether the trial judge's finding that the substance was marijuana is either plainly wrong or without evidentiary support, D.C.Code 1973, § 17–305(a). In the absence of a determination by this court that the trial judge's finding is so flawed, the judgment of the lower court must be affirmed. In this case, there is sufficient evidence to support the trial judge's finding.

The government chemist testified at trial that he had performed one microscopic and

three chemical tests on the substance. These four tests led him to conclude that the material was 100% marijuana. This conclusion was given greater weight by the expert's extensive experience in marijuana identification. He received a B.S. degree in chemistry and had undergone six months of specialized training in drug identification. Approximately one-half of this training was devoted to marijuana identification. He also had taken a course in the microscopic analysis of plant substances at the Bureau of Narcotics and Dangerous Drugs.

Appellant attempted to impeach the government's expert by assailing the manner in which he conducted the experiments. Appellant's expert, with long experience in laboratory technique, severely criticized the government chemist for subjecting the substance to too short a period of microscopic examination and for allowing insufficient time for the chemical tests to develop. Appellant's expert stated in conclusion that the techniques used by the government expert would have been insufficient to have permitted positive identification of the substance in a scientific publication. Despite the impressive credentials, in laboratory technique held by appellant's expert, his testimony was somewhat undermined by his lack of experience in marijuana identification. He admitted that he had performed only three analyses of marijuana in his life and that those analyses had been performed approximately twenty years ago. He also conceded that he had conducted one of the tests used by the government chemist only one or two times. Further, the expert's testimony was of limited value in that he never suggested a single substance other than marijuana which could pass all of the tests used by the government.

Looking at the testimony presented by the two experts and at the qualifications in marijuana identification of the two men, we conclude that while the trial court could look to other circumstances, it properly could have based its finding solely upon the scientific evidence.