**STATE of Maine**

v.

**Robert BONNEY.**

Supreme Judicial Court of Maine.

Argued Nov. 18, 1980.

Decided March 24, 1981.

---

Janet Mills (orally), Dist. Atty., South Paris, for plaintiff.

Berman, Berman & Simmons, P. A., William Robitzek (orally), John E. Sedgewick, Gary Goldberg, Lewiston, for defendant.

Before WERNICK, GODFREY, NICHOLS, GLASSMAN, ROBERTS and CARTER, JJ.

GLASSMAN, Justice.

Robert Bonney appeals from a judgment of conviction of trafficking in prison contraband, 17–A M.R.S.A. § 757(1)(B), entered in the Superior Court, Oxford County, on June 13, 1980, following a jury-waived trial.

Since no witnesses were called by the defense, the evidence presented by the prosecution was undisputed. It established that Bonney was a prisoner of the Oxford County Jail when, on October 22, 1979, he left during the afternoon on work release; that upon his return to the jail later that day he was searched; that an envelope containing thirty yellow pills was found in his right front pocket; that as the pills were being counted Bonney grabbed one, exclaiming that they were vitamins and he had not taken one all day; and that the pills contained phentermine, a schedule Y drug. 17–A M.R.S.A. § 1102(3)(U).

Two exhibits were admitted into evidence. State's Exhibit No. 1 was the envelope and its contents. Although handwritten on the envelope were the words, "Appetite, 1 after Breakfast, [signed] Allen W. Weeks D.O.," it was stipulated at trial that Dr. Weeks had never treated or prescribed medication for Robert Bonney and that phentermine is only available by prescription.

State's Exhibit No. 2 was a signed, sworn certificate of laboratory analysis which provided the State's only proof of the content of the pills. The certificate stated in pertinent part:

> [T]he results of my analysis were as follows:
>
> approx. 0.5 gr. of crushed capsules marked # 172 (remains of three capsules) [T]he chrushed [sic] capsules contain Phentermine[.]

The defendant raises two arguments on appeal: (1) "trafficking," as that word is used in Section 757, requires a showing of intent to sell or barter, pursuant to the definition of trafficking in 17–A M.R.S.A. § 1101(17), and (2) because the laboratory analysis did not state how much phentermine was in the sample tested, the State did not show that a "useable amount" was present in the total packet of thirty pills and thereby failed to prove the defendant possessed contraband within the meaning of Section 757.

## I.

In pertinent part, the statute under which Robert Bonney was convicted, 17–A M.R.S.A. § 757, reads as follows:

1. A person is guilty of trafficking in prison contraband if:

. . . .

B. Being a person in official custody, he intentionally . . . possesses contraband.

The Criminal Code elsewhere sets forth definitions relating to drug offenses, among which is the definition of "trafficking":

As used in this Title, the following words shall, *unless the context clearly requires otherwise*, have the following meanings.

. . . .

17. "Traffick:"

A. To make, create, manufacture;

B. To grow or cultivate . . . ;

C. *To sell, barter, trade, exchange or otherwise furnish for consideration;* or

D. *To possess with the intent to do any act mentioned in paragraph C*

. . . .

17–A M.R.S.A. § 1101(17) (emphasis added).

Bonney notes that the State offered no proof that he possessed phentermine with an intent to sell. Without citing authority, he contends that this omission was fatal to the State's case because "trafficking" as defined under Section 1101(17) must be proven before a prisoner can be convicted of "trafficking" under Section 757.

■ The offense of which the defendant was convicted, although entitled "trafficking in prison contraband," does not include as a necessary element of the State's proof "trafficking" as defined in 17–A M.R.S.A. § 1101(17). The offense is proven when it is established beyond a reasonable doubt that 1) the defendant, 2) a person in official custody, 3) intentionally 4) possessed contraband. 17–A M.R.S.A. § 757(1)(B). We therefore reject the defendant's contention.

## II.

The "contraband," possession of which is forbidden under Section 757, is defined in pertinent part as anything "which a person confined in official custody is prohibited by statute or regulation from . . . possessing." *See* 17–A M.R.S.A. § 756(2), incorporated by reference in 17–A M.R.S.A. § 757(2).

■ The State never attempted to prove that Bonney's possession of phentermine violated a regulation. Although the presiding Justice found that such possession violated both jail regulations and a statute, the rules of the Oxford County Jail are not a proper object of judicial notice. *See* M.R. Evid. 201(b). *Cf. Summit Realty, Inc. v. Gipe*, Me., 315 A.2d 428, 429–30 (1974) (municipal ordinance). *See generally* C. McCormick, *Handbook of the Law of Evidence* 777 (2d ed. 1972). Therefore, we will treat the court's finding as though only the contravention of a statute were presently in issue.

It is undisputed that Bonney possessed phentermine; that phentermine is a schedule Y drug, 17–A M.R.S.A. § 1102(3)(U); and that unauthorized possession of a "useable amount" of a schedule Y drug is prohibited by statute. 17–A M.R.S.A. § 1107. The sufficiency of the evidence underlying Bonney's conviction hinges on our interpretation of the statutory phrase "useable amount." *Id.*

The only proof of the contents of the capsules was a signed, sworn certificate of laboratory analysis admitted in lieu of a qualified witness pursuant to 17–A M.R.S.A. § 1112. That certificate did not quantify the scheduled drug contained in the three capsules tested. Its statement that the crushed capsules "contain Phentermine" may mean that one hundred percent of each capsule was phentermine or, on the other hand, that the entire sample contained barely enough phentermine to be chemically detected.[1] Bonney argues that possession

---

1. Section 1112 of the Maine Criminal Code was amended by P.L.1979, ch. 512, sec. 34. Prior to this amendment, Section 1112 declared that a

duly authenticated, attested certificate of laboratory analysis "shall be prima facie evidence that the composition and quality of the drug or

of a barely detectable trace of a schedule Y drug, or even ten times such a trace (the phentermine content of all thirty capsules together), is not what the Legislature had in mind when it penalized the possession of "useable amount[s]."

If "useable" means useable to produce a particular or a desired effect, then Bonney's argument has merit; the State provided no evidence of how much phentermine is necessary to produce a psychological or physiological effect nor of what effects are sought by users. But such evidence, which is inescapably subjective, elusive and idiosyncratic, has not been required even in the few jurisdictions demanding proof of "useable amount." *See State v. Martinez*, 15 Ariz. App. 10, 485 P.2d 600 (1971); *People v. Schenk*, 24 Cal.App.3d 233, 101 Cal.Rptr. 75 (1972); *Moore v. United States*, 374 A.2d 299 (D.C.1977). *But cf. Commonwealth v. Driscoll*, 485 Pa. 99, 401 A.2d 312 (1979) (perceiving legislative intent in some possession offenses to require proof of quantity sufficient to have "potential for abuse").

Rather than placing on the prosecution the burden of proving beyond a reasonable doubt that the drug held by the defendant is capable of eliciting a particular or desired effect, the Legislature intended to prevent conviction for possession of a drug that cannot be consumed. Thus, for example, fragments of marijuana leaf garnered from the lint of a pocket, *e. g., People v. Villalobos*, 245 Cal.App.2d 561, 54 Cal.Rptr. 60 (1966), have not, in the absence of affirmative evidence to the contrary, been deemed "useable." *Cf.* 22 M.R.S.A. § 2383 (making

possession of a "usable amount" of marijuana a civil violation); 107th Me.Leg.Rec. B1724 (1975) (remarks of Rep. Hughes). Similarly, where heroin residue is scraped from a spoon or recovered from wads of cotton, possession of a "useable amount" of heroin has not been proven without undisputed evidence that the residuum could be, and often is, redissolved, reabsorbed into a syringe and re-injected. *See State v. Moreno*, 92 Ariz. 116, 374 P.2d 872 (1962); *People v. Leal*, 64 Cal.2d 504, 50 Cal.Rptr. 777, 413 P.2d 665 (1966).

Maine is one of only a few states to require proof that a scheduled drug knowingly possessed be useable. *See* Comment, *Criminal Liability for Possession of Nonusable Amounts of Controlled Substances*, 77 Colum.L.Rev. 596 (1977). Although the requirement of a useable amount is rejected by the majority of jurisdictions, it is rooted in sound policy. The proscription of possession has been called " 'the penalized state of preparation,' " *Edelin v. United States*, 227 A.2d 395, 397 (D.C. 1967), *quoting* J. Hall, *General Principles of Criminal Law* 584–85 (2d ed. 1960); since a major purpose of Maine's possession statute, 17–A M.R.S.A. § 1107, is to thwart the imminent danger of a drug's future use, the statute will not apply when that danger does not exist. When, therefore, the quantity of the drug possessed is so minute and its form so anomalous that under the known practices of users the drug cannot be consumed, it cannot be said to exist in a "useable amount."[2] But when, as in the

---

substance is as stated therein." By virtue of the amendment, Section 1112 now declares that the certificate "shall be prima facie evidence that the composition, quality, *and quantity* of the drug or substance are as stated therein." (Emphasis added).

In their statement of fact, the drafters of the bill incorporating this and forty-three other amendments noted that they intended no major policy changes, and this amendment is not among a list of non-major changes they did intend. Me.Leg.Doc.No.1661, 109th Leg., 1st Sess. (1979). Hence, we do not believe the Legislature meant to assert that all certificates admitted into evidence after the effective date of this amendment *must* state the quantity of

the scheduled drug contained in the sample tested when, prior to the amendment, Section 1112 implicitly allowed the laboratory to omit a statement of quantity. The only effect of the amendment is to make express what hitherto was not express; namely, if a certificate should contain a statement of quantity, this statement, like that of quality and composition, shall be given *prima facie* force as evidence.

2. This test is essentially consistent with that of other "useable amount" jurisdictions. *See, e. g., State v. Martinez*, 15 Ariz.App. 10, 485 P.2d 600 (1971) (quantity such as to be useable under known practices of addicts); *People v. Leal*, 64 Cal.2d 504, 50 Cal.Rptr. 777, 413 P.2d 665 (1966) (unuseable if cannot be sold or con-

case before us, the drug is contained in capsule or pill form, its consumability is demonstrated and proof of a detectable amount will give rise to the permissible inference of a useable amount.[3] That inference was sufficient to support a finding of guilty.

The entry is:

Judgment affirmed.

All concurring.

sumed); *Edelin v. United States*, 227 A.2d 395 (D.C.1967) (unuseable if cannot be sold, administered or dispensed); *Moore v. State*, 562 S.W.2d 226, 228 (Tex.Crim.App.1977) ("'amount sufficient to be applied to use commonly made thereof,'" *quoting Pelham v. State*, 164 Tex.Crim. 226, 228–29, 298 S.W.2d 171, 173 (1957)).

3. There may be circumstances in which despite possession of a useable amount there is a reasonable doubt as to the requisite culpable mental state. Such circumstances are not present in this case.