## A99A2076. CUNROD v. THE STATE.
(526 SE2d 900)

JOHNSON, Chief Judge.

Thomas Cunrod appeals after being convicted of possessing marijuana with intent to distribute. Cunrod contends that the trial court committed reversible error by allowing the state to introduce: (1) evidence seized from his home pursuant to what he claims was a defective warrant; (2) testimony and a crime lab report identifying the substance as marijuana; and (3) incriminating statements he made while in police custody. Because each of these contentions is without merit, we affirm his conviction.

1. Cunrod asserts that the warrant authorizing the search of his apartment was not valid because it was altered by a police officer after the issuing judge signed it. We hold that the warrant was valid.

The record shows that a sergeant with the Houston County Sheriff's Department prepared an affidavit and search warrant for Cunrod's apartment. The documents correctly indicated that the premises to be searched were in Houston County, but the sergeant mistakenly typed "Peach Superior Court[,] Peach County, Georgia" in the heading of the affidavit, "Peach County" below the magistrate's signature on the bottom of the warrant, and "Peach County" once in the body of the warrant. Without detecting the errors, he gave the affidavit and warrant to a second sergeant and investigator, who took the documents to the home of a Houston County magistrate.

The second sergeant noticed the errors and pointed them out to the magistrate before the magistrate reviewed the documents. The magistrate was satisfied with the probable cause aspect of the warrant and told the sergeant to strike out "Peach" and insert "Houston" on the documents, which the officer did before leaving the magistrate's home.

After the warrant was executed, the sergeant who prepared the original documents presented the magistrate with a written inventory of the items seized in the search. The sergeant noticed that the search warrant signed days earlier still contained one reference to "Peach County." He asked the magistrate what should be done about it. The magistrate told the sergeant that the documents contained too many corrections and that he wanted "something that looked better." The sergeant created a new affidavit and warrant which contained the exact same information as the original documents, except that the county name was corrected. The investigator who signed the original affidavit was resworn by the magistrate and signed the new affidavit. The magistrate signed the new affidavit and warrant.

An officer may correct an error in a search warrant after it has been issued by obtaining authorization from the issuing magistrate. *State v. Sanders*, 155 Ga. App. 274, 275 (270 SE2d 850) (1980).

Because the issuing magistrate authorized the changes, the officer acted properly in correcting the original documents.

Furthermore, the changes to the documents were reasonable under the facts presented here. The errors in the affidavit and warrant were clearly typographical and were not so material as to destroy the integrity of the affidavit or the validity of the warrant. See *Scott v. State*, 213 Ga. App. 84, 86 (1) (444 SE2d 96) (1994). There was never any question regarding the county in which the apartment was located or the county which the magistrate served, and any prudent officer executing the warrant would have been able to locate the premises definitely and with reasonable certainty. See *Gumina v. State*, 166 Ga. App. 592, 594 (2) (305 SE2d 37) (1983).

While we do not encourage officers to alter the contents of an affidavit or warrant after the warrant is issued, the type of changes made here, with the express authorization of the issuing magistrate, did not vitiate the warrant. See *Jackson v. State*, 130 Ga. App. 6, 7-8 (4) (202 SE2d 206) (1973); see generally *Oliver v. State*, 161 Ga. App. 567, 568 (1) (b) (287 SE2d 698) (1982). And, although the evidence as to the circumstances surrounding the making of the changes conflicted in some respects, this court will not disturb the trial court's findings based upon conflicting evidence if there is any evidence to support them and will construe the evidence so as to uphold the trial court's findings and judgment. See *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994). We note that because the original amended warrant upon which the search was based was valid, we need not decide whether the officers acted properly in creating, after the search, an affidavit and warrant which purported to replace the original documents. The trial court did not err in denying Cunrod's motion to suppress.

2. Cunrod argues that the trial court erred in admitting into evidence the substance seized from his home and in admitting testimony and a lab report identifying the substance as marijuana. He claims the state failed to show that the general scientific principles and techniques involved in the testing were valid and reliable and that the technician performed the procedures in an acceptable manner.

A drug chemist from the state crime lab testified that she ran a series of tests on the substance recovered from Cunrod's home, including microscopic, thin layer chromatography, and Duquenois-Levine tests. Based upon these tests, she concluded that the substance was marijuana.

Although the state did not introduce evidence showing that the scientific principles and techniques used were valid and reliable, the scientific evidence introduced in this case was not novel and has been widely accepted in Georgia courts. See, e.g., *Hicks v. State*, 228 Ga.

App. 235, 238 (3) (494 SE2d 342) (1997); *Burch v. State*, 213 Ga. App. 392, 393 (444 SE2d 370) (1994); *Ray v. State*, 205 Ga. App. 866 (424 SE2d 13) (1992). The tests utilized here have also been recognized as reliable in a substantial number of courts elsewhere. See, e.g., *Moore v. United States*, 374 A2d 299 (D.C. App. 1977) (microscopic, thin layer chromatography, and Duquenois-Levine tests for the identification of marijuana have such standing and recognition among scientists that the results are admissible); *People v. Escalera*, 541 NYS2d 707 (City Crim. Ct. 1989) (Duquenois-Levine test generally accepted as reliable by experts and appellate courts); *Ohio v. Anderson*, Ottawa County Court of Appeals (6th Dist.), C.A. No. OT-83-27 (decided March 23, 1984) (Duquenois-Levine test generally accepted as a reliable test for identifying marijuana). Once a procedure has been recognized in a substantial number of courts, a trial judge may judicially notice, without taking evidence, that the procedure has been established with verifiable certainty. See *Pye v. State*, 269 Ga. 779, 786 (13) (505 SE2d 4) (1998).

As for whether the tests were performed in an acceptable manner, the trial court found that the witness who conducted the tests was an expert in her field, a finding to which Cunrod stipulated. And Cunrod established through cross-examination that the expert witness obtained the results in this case "through the scientific examination techniques [the state crime] laboratory utilizes as a routine matter."

The trial court did not err in admitting the evidence. See *Pruitt v. State*, 270 Ga. 745, 749 (4) (514 SE2d 639) (1999).

3. Cunrod urges that his incriminating in-custody statements should not have been admitted because the statements were made while he was under the influence of marijuana. Due to his impairment, he argues, he was unable to make a knowing or intelligent waiver of his rights.

Whether a waiver is knowing, voluntary, and intelligent depends upon the totality of the circumstances. *Bishop v. State*, 268 Ga. 286, 287 (2) (486 SE2d 887) (1997). Because the issue of waiver depends on the totality of the circumstances, even an impaired person can validly waive his rights. See *Shelby v. State*, 265 Ga. 118, 119 (2) (453 SE2d 21) (1995).

In this case, one of the officers present during the interview testified that Cunrod appeared to be lucid and to understand what was happening. The other officer testified that Cunrod appeared not to be impaired and apparently understood what was going on. Before Cunrod made any statements, one of the officers read him his *Miranda* rights. Cunrod was then given a form entitled "YOUR RIGHTS," which listed his Fifth Amendment rights. After reviewing the form, Cunrod signed his initials next to each one of the rights and

signed his name beneath a paragraph stating that he had read and understood his rights, was willing to make a statement and answer questions, understood and knew what he was doing, was not promised anything, and was not threatened, pressured, or coerced. Significantly, as the trial court noted, at trial Cunrod was able to remember many details about the circumstances surrounding his arrest and the interview, a fact which belies his contention that he was so impaired that he did not know what was going on.

The state established to the trial court's satisfaction that Cunrod was coherent at the time of questioning. The trial court's finding that Cunrod's statements were made with knowledge of his rights was neither clearly erroneous nor an abuse of discretion. See *Sanborn v. State*, 251 Ga. 169, 170 (2) (304 SE2d 377) (1983); *Drake v. State*, 231 Ga. App. 776, 779-780 (2) (501 SE2d 14) (1998).

*Judgment affirmed. McMurray, P. J., and Phipps, J., concur.*

DECIDED DECEMBER 14, 1999 —
RECONSIDERATION DENIED JANUARY 7, 2000.

*The Lucas Firm, Alex H. Morrow*, for appellant.
*Kelly R. Burke, District Attorney, Russell B. Mabrey, Jr., Assistant District Attorney*, for appellee.