## A02A0067. THOMAS v. THE STATE.
### (565 SE2d 130)

PHIPPS, Judge.

Following a bench trial, Cardell Thomas was found guilty of trafficking in cocaine and sentenced to 25 years imprisonment and fined $1 million. Thomas appeals, contending that the evidence was insufficient to support his conviction[1] and that the trial judge did not utilize the "reasonable man" standard in evaluating the evidence. Because the evidence was sufficient to support the conviction and the trial court sits as the trier of fact in a bench trial, we affirm.

Viewed in the light most favorable to the verdict,[2] the evidence showed that while Thomas was being held in jail, he was approached by Kenneth McLeod, a special agent with the Federal Drug Enforcement Administration (DEA), about being a confidential informant (CI).

Following the initial interview, Thomas was released from jail, and he and McLeod met in the Macon DEA office to initiate his establishment as a CI. McLeod testified that as part of the process, Thomas was photographed, fingerprinted, and shown a document called a form "473," which provides guidelines for the CI's behavior. Among other things, the CI is prohibited from violating any laws without the direction of the DEA or another law enforcement agency. McLeod said that after he explained the contents of the form to Thomas and asked him whether he had any questions, Thomas said "no" and signed the document.

McLeod testified that he told Thomas that his application for CI status must be approved by a supervisor and that it could take some

---

[1] Although Thomas specifically enumerated as error that "the evidence is insufficient to prove beyond a reasonable doubt that [he] was not entrapped," he did not support his entrapment claim beyond this conclusory statement. Under Court of Appeals Rule 27 (c) (2), an appellant must support enumerations of error with argument and citations of authority, and "[m]ere conclusory statements . . . are not the type of meaningful argument contemplated by [Rule 27 (c) (2)]." Jenkins v. State, 240 Ga. App. 102, 103 (1) (522 SE2d 678) (1999). Accordingly, any argument that Thomas was entrapped is deemed abandoned.

[2] Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

time. He instructed Thomas to let his former drug contacts know that he was out of jail and would soon be ready to do business with them. He also told Thomas to go to Miami to reestablish contact with his former supplier. McLeod said that at no time did he instruct Thomas to conduct any drug transactions. He testified that on one occasion when Thomas called him and told him that he had been to Miami, he told Thomas that he was having problems getting him accepted as a CI. He said that he called Thomas a minimum of four to five times asking for additional information needed to process Thomas's paperwork.

Thomas later flew into Hartsfield airport from Miami and was arrested for drug trafficking after a package of powder cocaine was found on his person. He told the officer who detained him that he was working for McLeod as a CI. The officer contacted McLeod and was told that Thomas was not an official CI.

According to Thomas, his drug suppliers in Miami were skeptical, and he had to reassure them that he could be trusted. He said that he had made three trips to Miami and that he had talked with Agent McLeod after the first two trips and was never told to stop his efforts to make connections. Notably, Thomas explained that on his last trip to Miami when he was given a bag of cocaine on consignment and told to bring back $10,000, he did so because it would have been "totally out of character" for him not to have taken the cocaine. He also said that he felt intimidated by what he perceived to be "dangerous people." He explained that he did not call McLeod to tell him about the drugs before he boarded the airplane because the Miami drug suppliers were with him until he boarded.

The State proffered testimony from an inmate who shared a cell with Thomas that Thomas told him he had in fact purchased and transported cocaine on all three trips to Miami. The inmate also testified that Thomas said that if he was ever caught with drugs he would tell authorities that he was a CI, even though in reality he "wouldn't ever do nothing for no white folks."

Contrary to Thomas's assertions, a reasonable person could have concluded beyond a reasonable doubt that Thomas knew that he was not yet an approved CI and that he conducted the drug transaction for his own benefit. In a bench trial, the trial court sits as the trier of fact, and its findings are analogous to a jury verdict.[3] The credibility of the witnesses was for the trial court to determine, and that determination will not be disturbed absent an abuse of discretion.[4] We find no such abuse in this case.

---

[3] *Green v. State*, 239 Ga. App. 617, 618 (2) (521 SE2d 441) (1999).
[4] *Lyons v. State*, 244 Ga. App. 658, 661 (1) (535 SE2d 841) (2000).

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED MAY 6, 2002.

*James W. Bradley*, for appellant.
*Robert E. Keller, District Attorney, Lalaine A. Briones, Assistant District Attorney*, for appellee.