## A06A0088. CARLSON v. THE STATE.
### (634 SE2d 410)

MIKELL, Judge.

The Superior Court of Coffee County revoked Stephen A. Carlson's probation on the grounds that he violated the terms of his probated sentence by possessing marijuana in the county jail and by obstructing or hindering a law enforcement officer. On appeal, Carlson argues that the trial court's admission of testimony by a certified tester of marijuana was erroneous because the expert was not qualified under OCGA § 24-9-67.1 and that the evidence was insufficient to establish that he obstructed a law enforcement officer. We affirm.

On September 7, 1995, Carlson pled guilty to a felony violation of the Georgia Controlled Substances Act and was sentenced to ten years probation. On May 11, 2005, Carlson was served an "Amended Petition for Modification/Revocation of Probation," which set forth three grounds for revoking his probation, two of which are pertinent here: (1) Carlson unlawfully brought marijuana into the Coffee County jail while he was an inmate there on April 9, 2005; and (2) Carlson committed the offense of obstructing a law enforcement officer on that same day. The trial court revoked the remainder of Carlson's probation.

1. Carlson contends that the trial court should have excluded the expert testimony that the substance at issue was marijuana.[1] The issue on appeal, which is one of first impression, is whether recently

---

[1] Carlson does not deny that he brought marijuana into the jail nor does he argue that his probation should not have been revoked on that ground.

enacted OCGA § 24-9-67.1,[2] which governs expert witness testimony in civil actions, applies to probation revocation hearings. For the reasons that follow, we find that it does not.

The record shows that certified jailer A. J. Phillips testified that on or about April 9, 2005, he walked into Carlson's bunk and saw him rolling a marijuana joint. He took the joint from Carlson, who simultaneously threw a bag, which also contained marijuana, to the other side of the bunk. Phillips further testified that he placed the marijuana into the evidence locker for officer Scott Harper.

Scott Harper testified that he is employed as a drug investigator with the Coffee County Sheriff's Office and is a licensed marijuana examiner. Harper explained how he obtained his certification from the Georgia Bureau of Investigation to become a licensed tester of marijuana and the three tests that must be conducted to determine whether a substance is marijuana, which are the microscopic test, Duquenois Levine Reagent test, and KN Reagent or Fast Blue test. He testified that an examiner must have a positive result from all three tests before determining conclusively that a substance is marijuana and that the three tests, taken together, establish the identity of marijuana to a verifiable level of scientific certainty. When Harper was asked the results of the test, defense counsel objected on the grounds that Harper had not been qualified as an expert and was allowed to voir dire him. The trial court then overruled counsel's objection, and Harper testified that the substance was marijuana.

Defense counsel argued that probation revocations are civil proceedings, thus OCGA § 24-9-67.1 applies, and under *Daubert v. Merrell Dow Pharmaceuticals*,[3] Harper was not qualified to give his opinion as to his interpretation of the test results. The trial court overruled the objection, finding that *Daubert* did not mandate the exclusion of the testimony as the pertinent issue was whether Harper was certified as an expert to test the substance. We agree with the trial court's ruling.

Prior to the passage of Georgia's Tort Reform Act, the rule pertaining to expert testimony was codified at OCGA § 24-9-67 and provided that "experts' opinions on any question of science, skill, trade, or like questions shall always be admissible; and such opinions may be given on the facts as proved by other witnesses."[4] Effective February 16, 2005, OCGA § 24-9-67 was amended by striking the old

---

[2] OCGA § 24-9-67.1, part of the Tort Reform Act of 2005 ("Senate Bill 3"), Ga. L. 2005, became effective on February 16, 2005.

[3] 509 U. S. 579 (113 SC 2786, 125 LE2d 469) (1993).

[4] (Punctuation omitted.) *Dailey v. State*, 271 Ga. App. 492, 496 (3) (610 SE2d 126) (2005).

Code section, and inserting in its place OCGA §§ 24-9-67 and 24-9-67.1. The newly enacted OCGA § 24-9-67 reads exactly as the pre-Tort Reform statute, except that it states that it applies to criminal cases. OCGA § 24-9-67.1 provides that it "shall apply in all civil actions."[5] Carlson maintains that OCGA § 24-9-67.1 applies here because probation revocation is a quasi-criminal proceeding, which is a subcategory of civil cases.

Generally, a probation revocation hearing "is a judicial matter, as a person under probation is still under the jurisdiction of the sentencing court and subject to the terms and conditions set down by the court."[6] In the hearing, the trial judge determines "whether the conduct of the defendant during the probation period has conformed to that outlined in the order of probation."[7] Regarding the issue of whether probation revocation is a civil or criminal proceeding, in *Gagnon v. Scarpelli*,[8] the United States Supreme Court stated that

---

[5] OCGA § 24-9-67.1 (a). Subsection (a) also provides that

[t]he opinion of a witness qualified as an expert under this Code section may be given on the facts as proved by other witnesses. The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing or trial. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

The remaining arguably pertinent subsections of the statute provide as follows:

(b) If scientific, technical, or other specialized knowledge will assist the trier of fact in any cause of action to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if: (1) The testimony is based upon sufficient facts or data which are or will be admitted into evidence at the hearing or trial; (2) The testimony is the product of reliable principles and methods; and (3) The witness has applied the principles and methods reliably to the facts of the case. . . . (d) Upon motion of a party, the court may hold a pretrial hearing to determine whether the witness qualifies as an expert and whether the expert's testimony satisfies the requirements of subsections (a) and (b) of this Code section. Such hearing and ruling shall be completed no later than the final pretrial conference contemplated under Code Section 9-11-16. . . . (f) It is the intent of the legislature that, in all civil cases, the courts of the State of Georgia not be viewed as open to expert evidence that would not be admissible in other states. Therefore, in interpreting and applying this Code section, the courts of this state may draw from the opinions of the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, [supra]; *General Electric Co. v. Joiner*, 522 U. S. 136 [(118 SC 512, 139 LE2d 508)] (1997); *Kumho Tire Co. Ltd. v. Carmichael*, 526 U. S. 137 [(119 SC 1167, 143 LE2d 238)] (1999); and other cases in federal courts applying the standards announced by the United States Supreme Court in these cases.

[6] (Citation omitted.) *Williams v. Lawrence*, 273 Ga. 295, 296 (540 SE2d 599) (2001), citing OCGA §§ 42-8-34 (g) and 42-8-35.

[7] *Robinson v. State*, 154 Ga. App. 591, 593 (2) (269 SE2d 86) (1980).

[8] 411 U. S. 778 (93 SC 1756, 36 LE2d 656) (1973).

probation revocation is not a stage of a criminal prosecution.[9] Prior thereto, in *Sellers v. State*,[10] this court had remarked obliquely that a probation revocation proceeding was "somewhat . . . 'of a civil nature.' "[11]

Despite our dictum in *Sellers* in 1963, we held in 2004 that the evidentiary test set forth in *Harper v. State*,[12] which applies in criminal cases, applies to probation revocation proceedings.[13] In *Harper*,[14] our Supreme Court held that the trial judge determines whether a procedure or technique has reached a scientific stage of verifiable certainty based on evidence available to him.[15] Furthermore, once a procedure has been recognized in a substantial number of courts, a trial judge may judicially notice its level of verifiable certainty.[16] In the instant case, the tests performed were not novel and have been widely accepted in Georgia courts and a substantial number of courts elsewhere.[17]

In light of the long-standing history of *Harper*[18] and its progeny, which existed when the legislature enacted OCGA § 24-9-67.1 as a part of Georgia's Tort Reform Act, we do not conclude that the legislature intended to abandon the *Harper* evidentiary test in criminal cases. Indeed, the almost verbatim re-enactment of old OCGA § 24-9-67 as new OCGA § 24-9-67 would seem to affirm Georgia's traditional reliance upon *Harper* in criminal matters, and we expressly hold that new OCGA § 24-9-67, and not OCGA § 24-9-67.1 controls the admission of evidence in probation revocation hearings. Accordingly, the trial court's ruling to permit Harper's testimony was not erroneous as the state was not required in a probation revocation proceeding to comply with *Daubert* to prove Harper's qualifications.

2. Carlson argues that the trial court erred by revoking his probation on the grounds that he obstructed a law enforcement officer because the evidence did not support the charge. We disagree.

"[T]his court will not interfere with a revocation unless there has been a manifest abuse of discretion on the part of the trial court."[19] "It

---

[9] Id. at 782 (II).

[10] 107 Ga. App. 516 (130 SE2d 790) (1963).

[11] Id. at 518. Accord *Scott v. State*, 131 Ga. App. 504, 504-505 (206 SE2d 137) (1974).

[12] 249 Ga. 519 (292 SE2d 389) (1982).

[13] *Grinstead v. State*, 269 Ga. App. 820, 821-822 (1) (605 SE2d 417) (2004).

[14] Supra.

[15] Id. at 525-526 (1).

[16] Id. at 526 (1).

[17] *Cunrod v. State*, 241 Ga. App. 743, 744-745 (2) (526 SE2d 900) (1999).

[18] Supra.

[19] (Citation and punctuation omitted.) *Parker v. State*, 275 Ga. App. 35 (619 SE2d 750) (2005).

is well settled law that the quality and quantum of evidence necessary for revocation of probation is not that demanded for conviction of crime."[20] "According to OCGA § 42-8-38 (c), the revocation or continuance of probation is within the discretion of the trial court so long as a ruling to revoke is based on at least a preponderance of the evidence, as required by OCGA § 42-8-34.1 (a)."[21] The evidence and facts must be such as to reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of probation.[22]

Pursuant to OCGA § 16-10-24 (a), a person commits the offense of misdemeanor obstruction of a law enforcement officer when he or she knowingly and wilfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties. In the instant case, Officer Michael Vickers, Jr., testified that on the evening in question, he was fingerprinting several new inmates in the processing department at the jail; that Carlson gave Vickers his arrest warrant after receiving it from another officer; that after fingerprinting Carlson, he gave Carlson a file that contained the arrest warrant and sent him to Officer Hoyt Courson, who was entering information on the inmates on the computer in the same room; and that 20 to 30 minutes later, they discovered that Carlson's arrest warrant was missing. Courson testified that Carlson did not have the arrest warrant when he approached Courson's desk to be processed; that they never found the warrant; that he was unable to "book" Carlson without the warrant; and that the other inmates in processing at the time delivered all of their paperwork to him without incident. Although the evidence that Carlson made his arrest warrant unavailable to the officers is circumstantial, it is sufficient to authorize the trial court's finding, by a preponderance of the evidence, that Carlson obstructed the officers.[23]

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED JUNE 12, 2006 —
RECONSIDERATION DENIED JULY 25, 2006 — ■

*Ferris & Lott, Patrick S. Ferris*, for appellant.

---

[20] (Punctuation and footnote omitted.) *Dugger v. State*, 260 Ga. App. 843, 846 (2) (581 SE2d 655) (2003).

[21] *Solomon v. State*, 237 Ga. App. 655, 656 (516 SE2d 376) (1999).

[22] See *Christian v. State*, 164 Ga. App. 612, 613 (2) (298 SE2d 325) (1982), citing *United States v. Clanton*, 419 F2d 1304, 1305 (5th Cir. 1969).

[23] See *Solomon*, supra. See also *Harper v. State*, 146 Ga. App. 337, 338 (246 SE2d 391) (1978) (circumstantial evidence supported probation revocation).

*Richard E. Currie, District Attorney, Kurt J. Martin, Assistant District Attorney*, for appellee.

*J. David Miller, Stephen D. Kelley, District Attorneys, Carmen D. Smith, Solicitor-General, Joseph F. Burford, Leigh S. Schrope, James C. Bonner, Jr.*, amici curiae.