### A10A0224. FORTUNE v. THE STATE.

(696 SE2d 120)

BERNES, Judge.

Minutes after defendant Brandon Bjorn Fortune fled from law enforcement during a traffic stop for a seat belt violation, police officers discovered cocaine and marijuana discarded at the intersection where Fortune had initially fled in his vehicle. Fortune subsequently was indicted and convicted of trafficking in cocaine; possession of cocaine with intent to distribute; possession of less than one ounce of marijuana; abandonment of a controlled substance; and fleeing or attempting to elude a police officer. On appeal from the denial of his amended motion for new trial, Fortune challenges the

sufficiency of the evidence and contends that the trial court erred in admitting evidence of a chemical field test conducted by one of the police officers. For the following reasons, we affirm.

Following a criminal conviction, we construe the evidence in the light most favorable to the jury's verdict. *Grier v. State*, 273 Ga. App. 517 (1) (615 SE2d 586) (2005). So viewed, the evidence showed that police officers with the City of Snellville Police Department were checking for seat belt usage at the intersection of Pinehurst Road and Valley Creek Circle, a four-way stop in a residential subdivision in Gwinnett County. The officers, who were on foot, were stationed on each side of the four-way stop so that they could observe drivers who stopped at the intersection. The officers instructed drivers who were not wearing their seat belts to pull over to the side of the road to receive a traffic citation.

Fortune, who was not wearing his seat belt, drove up to the intersection. There were no other occupants in Fortune's vehicle. Based upon the observed traffic violation, one of the officers approached the vehicle, noted to Fortune that he did not have on his seat belt, and ordered Fortune to pull over in front of the officer's marked patrol car that was parked on Valley Creek Circle. The officer was in his police department uniform with his badge displayed. At first, Fortune complied with the officer's order by turning onto Valley Creek Circle. Fortune, however, continued driving past the officer's patrol car and accelerated rapidly as he turned at the next intersection onto Ridgewood Way.

As Fortune fled from the scene of the traffic stop, the officer turned his back so that he could get into his patrol car to give pursuit. After getting into his patrol car, the officer activated his blue lights and siren, transmitted a radio lookout describing Fortune and his vehicle, and gave chase. Within minutes, officers spotted Fortune less than a mile away from the original traffic stop heading in the direction of a major thoroughfare. Two patrol vehicles blocked Fortune's vehicle from proceeding any further, and Fortune was taken into custody.

Inside Fortune's vehicle, officers found a portable digital scale of a type commonly used for weighing illegal narcotics for purposes of distribution. The scale had white powdery residue on it. One of the responding officers performed a chemical field test on the residue, which tested positive for cocaine, but he did not submit it to the state crime lab for further chemical analysis. Also found in the vehicle were several baggies of a type commonly used for packaging and distributing illegal narcotics, and a pair of hemostats that could be used to hold and smoke marijuana. In addition to the drug paraphernalia, officers discovered loose marijuana and two marijuana cigarettes in the ashtray of the vehicle.

After Fortune was taken into custody, an officer advised him of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). Fortune agreed to speak with the officer and claimed to have fled because he did not have a driver's license. Officers, however, subsequently found Fortune's valid driver's license in his vehicle.

Because Fortune had fled from the traffic stop, had illegal drugs and drug paraphernalia in his vehicle, and had misrepresented his reason for fleeing from the stop, the officers decided to retrace the route taken by Fortune to see if he had discarded any contraband. While retracing Fortune's route, officers discovered a bag containing a white powder substance near a mailbox at the intersection of Valley Creek Circle and Ridgewood Way. The bag was not weathered or covered by any debris. The substance in the bag was later tested at the state crime lab and determined to be 28.79 grams of 59.8 percent pure cocaine. An officer opined that based upon his training and experience, the quantity of cocaine, which had a street value of between $80 to $100 per gram, was inconsistent with personal use.

In the roadway at the same intersection, officers also discovered a bag of what was suspected to be marijuana based upon its odor and appearance. An officer with training and experience in identifying marijuana subsequently confirmed that the bag contained 5.6 grams of marijuana.

1. Fortune challenges the sufficiency of the evidence regarding his convictions for trafficking in cocaine, possession of cocaine with intent to distribute, possession of less than one ounce of marijuana, and abandonment of a controlled substance.[1] His sole argument on appeal is that there was insufficient evidence connecting him to the bags of cocaine and marijuana found at the intersection to support his convictions. Fortune emphasizes that none of the state's witnesses actually saw him throw any contraband from his vehicle, and he asserts that the circumstantial evidence failed to exclude every reasonable hypothesis except that of his guilt. As such, Fortune argues that the state failed to prove beyond a reasonable doubt that

---

[1] In his first enumeration of error, Fortune asserts that there was insufficient evidence to convict him of any of the charged offenses. In the argument section of his brief, however, Fortune provides no argument or legal authority addressing the sufficiency of the evidence as to his conviction for fleeing or attempting to elude a police officer. Under Court of Appeals Rule 25 (a) (3), "an appellant must support enumerations of error with argument and citations of authority, and mere conclusory statements are not the type of meaningful argument contemplated by [the rule]." (Citation and punctuation omitted.) *Thomas v. State*, 255 Ga. App. 261, n. 1 (565 SE2d 130) (2002). Fortune thus has abandoned any challenge he may have had to that conviction on sufficiency grounds. See id. Nonetheless, we have reviewed the record and conclude that there was sufficient evidence for a rational trier of fact to find Fortune guilty beyond a reasonable doubt of fleeing or attempting to elude a police officer. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See OCGA § 40-6-395 (a).

he ever had actual or constructive possession of the contraband. We disagree.

It is true that in order to sustain a conviction based solely upon circumstantial evidence, "the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-4-6. But "the proved facts need exclude only *reasonable* hypotheses — not bare possibilities that the crime could have been committed by someone else." (Citation and punctuation omitted; emphasis supplied.) *Vines v. State*, 296 Ga. App. 543, 546 (1) (675 SE2d 260) (2009). And "[w]hether or not in a given case circumstances are sufficient to exclude every reasonable hypothesis save the guilt of the accused is primarily a question for determination by the jury." (Citation and punctuation omitted.) *Grier*, 273 Ga. App. at 518 (1).

In the present case, there was evidence that Fortune fled from the police for what was a minor traffic offense; had cocaine residue, marijuana, and drug paraphernalia inconsistent with mere personal use in his vehicle; and lied to police about his reason for fleeing. Furthermore, the bags of cocaine and marijuana were found at the intersection where Fortune had first accelerated and turned his vehicle to flee from police, only a few minutes after he had taken that route. Additionally, with respect to the bag of cocaine, there was testimony that the bag was not weathered or covered in debris, and that the cocaine inside it was worth between approximately $2,300 and $2,800, making it highly likely that someone quickly abandoned the contraband out of perceived necessity. Based upon this combined evidence at trial, the jury was authorized to find that Fortune discarded the cocaine and marijuana from his vehicle when he fled from the traffic stop. See *Grier*, 273 Ga. App. at 518 (1) (where police found cocaine along the route where the defendant fled, "the jury was authorized to conclude that [the defendant] threw the cocaine at issue out of his pocket as he ran from or struggled with the police"); *Smith v. State*, 237 Ga. App. 616, 618 (1) (516 SE2d 319) (1999) (where police found cocaine beside the road where the defendant swerved during a car chase, "the jury was authorized to infer that the cocaine found on the roadside was in [the defendant]'s possession until he abandoned it by throwing it out the car window"). See also *Hall v. State*, 294 Ga. App. 274, 275-276 (668 SE2d 880) (2008) (every reasonable hypothesis save that of guilt was excluded where there was evidence that, among other things, the defendant lied to the police); *Collins v. State*, 283 Ga. App. 188, 191 (1) (a) (641 SE2d 208) (2007) (flight is circumstantial evidence of guilt). "We do not find that the circumstantial evidence in this case established a reasonable hypothesis of innocence as a matter of law." *Smith*, 237 Ga. App. at

618 (1). Rather, under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), the evidence, when construed in the light most favorable to the verdict, authorized a rational trier of fact to have found the essential elements of the charged offenses beyond a reasonable doubt. See OCGA §§ 16-13-3; 16-13-30 (b), (j); 16-13-31 (a); *Grier*, 273 Ga. App. at 518 (1); *Smith*, 237 Ga. App. at 618 (1).[2]

2. The trial court judicially noticed, without receiving any evidence, that the chemical field test of the suspected cocaine residue found on the digital scale was a procedure or technique that had been established with verifiable certainty. Fortune argues that the trial court erred in admitting evidence of the chemical field test without requiring the state to present expert foundational testimony showing the scientific reliability of the test. We discern no abuse of discretion by the trial court.

Under the longstanding precedent of *Harper v. State*, 249 Ga. 519, 525 (1) (292 SE2d 389) (1982), scientific evidence is not admissible in criminal cases unless "the procedure or technique in question has reached a scientific stage of verifiable certainty, or in the words of Professor Irving Younger, . . . the procedure 'rests upon the laws of nature.'" (Footnote omitted.) See OCGA § 24-9-67; *Vaughn v. State*, 282 Ga. 99, 101 (3) (646 SE2d 212) (2007) (reaffirming *Harper* standard in criminal cases). It is the role of the trial court to determine whether a scientific procedure or technique constitutes competent evidence under *Harper*, and the trial court's determination will not be disturbed absent a clear abuse of discretion. See *Riley v. State*, 278 Ga. 677, 682-683 (4) (604 SE2d 488) (2004); *Bostic v. State*, 173 Ga. App. 494, 495 (2) (326 SE2d 849) (1985). "The trial court may make this determination from evidence presented to it at trial by the parties; in this regard expert testimony may be of value. Or the trial court may base its determination on exhibits, treatises or the rationale of cases in other jurisdictions." *Harper*, 249 Ga. at 525 (1). Furthermore, "[o]nce a procedure has been recognized in a substantial number of courts, a trial judge may judicially notice, without receiving evidence, that the procedure has

---

[2] We note that Fortune's conviction of possession of cocaine with intent to distribute could have been based upon the cocaine found in his vehicle on the digital scale. See *Collins v. State*, 278 Ga. App. 103, 104 (1) (a) (628 SE2d 148) (2006) (positive chemical field test results sufficient to sustain drug conviction). See also *Lipsey v. State*, 287 Ga. App. 835, 837 (1) (652 SE2d 870) (2007) (noting that "possession of digital scales typically used to weigh drugs for distribution" can serve as evidence of the intent to distribute); *Copeland v. State*, 273 Ga. App. 850, 854 (2) (616 SE2d 189) (2005) ("Scales and baggies found at the same [location] as drugs are evidence of intent to distribute[.]"). Likewise, Fortune's conviction of possession of less than one ounce of marijuana could have been based upon the loose marijuana and two marijuana cigarettes discovered in the ashtray of his vehicle.

been established with verifiable certainty, or that it rests upon the laws of nature." Id. at 526 (1). Hence, if a scientific procedure or technique "is not novel, and has been widely accepted in Georgia courts," the trial court is entitled to take judicial notice that the procedure or technique meets the *Harper* standard for admissibility. *Whatley v. State*, 270 Ga. 296, 299 (6) (509 SE2d 45) (1998). See *Al-Amin v. State*, 278 Ga. 74, 81-82 (11) (597 SE2d 332) (2004); *Pace v. State*, 271 Ga. 829, 839-840 (21) (b) (524 SE2d 490) (1999); *Carlson v. State*, 280 Ga. App. 595, 598 (1) (634 SE2d 410) (2006); *Hawkins v. State*, 223 Ga. App. 34, 38 (1) (476 SE2d 803) (1996); *Mitchell v. State*, 200 Ga. App. 146, 149 (3) (407 SE2d 115) (1991).

Applying these principles to the case at hand, we note that chemical field tests of suspected cocaine are not novel, and have been widely accepted in Georgia courts. See, e.g., *Johnson v. State*, 289 Ga. App. 206, 208 (656 SE2d 861) (2008); *West v. State*, 270 Ga. App. 71, 76 (5) (606 SE2d 100) (2004); *Davis v. State*, 260 Ga. App. 853, 854 (581 SE2d 380) (2003); *Wallace v. State*, 134 Ga. App. 708, 710 (5) (215 SE2d 703) (1975). Indeed, in prior cases involving such chemical field testing, we have expressly stated that "[w]e have found no case where the results of a chemical field test have been held inadmissible," and instead have indicated that the proper trial procedure is to admit the chemical field test results and then allow for a thorough and sifting cross-examination by defense counsel as to the reliability of the testing technique, as occurred in the present case.[3] (Citation and punctuation omitted.) *Lewis v. State*, 233 Ga. App. 560, 562 (3) (504 SE2d 732) (1998). See also *Davis v. State*, 135 Ga. App. 203, 205 (1) (217 SE2d 343) (1975), superseded in part by statute as stated in *Lankford v. State*, 295 Ga. App. 590, 593-594 (2) (672 SE2d 534) (2009). Moreover, in addition to such testing being recognized as admissible evidence, we have held that a chemical field test alone is sufficient to support a conviction for selling or possessing cocaine. See *Collins v. State*, 278 Ga. App. 103, 104 (1) (a) (628 SE2d 148) (2006); *Riddle v. State*, 267 Ga. App. 630, 632 (2) (a) (600 SE2d 709) (2004); *Lewis*, 233 Ga. App. at 562-563 (3). Under these circumstances, the trial court did not abuse its discretion in concluding that the chemical field testing of suspected cocaine has reached a scientific state of verifiable certainty justifying its admission in the absence of expert foundational testimony. See *Al-Amin*, 278 Ga. at 81-82 (11); *Pace*, 271 Ga. at 839-840 (21) (b); *Whatley*, 270 Ga. at 299 (6); *Carlson*, 280 Ga. App. at 598 (1); *Hawkins*, 223 Ga. App. at 38 (1); *Mitchell*, 200 Ga. App. at 149 (3).

---

[3] On cross-examination by Fortune's trial counsel, the officer who administered the chemical field test conceded that the test may not be 100 percent accurate.

YALE LAW LIBRARY

*Judgment affirmed. Barnes, P. J., and Blackburn, J., concur.*

DECIDED JUNE 3, 2010.

*Wystan B. Getz,* for appellant.

*Daniel J. Porter, District Attorney, Kimberly A. Gallant, Assistant District Attorney,* for appellee.