A10A0851. QUARTERMAN v. THE STATE.
(700 SE2d 674)

DOYLE, Judge.

Willie Otis Quarterman, Jr., was convicted of selling cocaine[1] and selling cocaine within 1,000 feet of a housing project.[2] He appeals, arguing that the evidence was insufficient and that the trial court erred (1) by allowing the State to recall a witness after the State had rested and (2) in charging the jury. For reasons that follow, we affirm Quarterman's conviction for selling cocaine and reverse his convic-

---

[13] (Punctuation omitted; emphasis in original.) *EnduraCare Therapy Mgmt.*, 298 Ga. App. at 811 (1).
[1] OCGA § 16-13-30 (b).
[2] OCGA § 16-13-32.5 (b).

tion for selling cocaine within 1,000 feet of a housing project.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*[3] and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.[4]

So viewed, the evidence shows that on March 8, 2007, Tift County Sheriff's Deputy Owen Rocky Carter, Jr., who was assigned to a narcotics task force, went to the Sunset Homes apartment complex to make an undercover narcotics purchase. Deputy Carter, who was in an unmarked vehicle that was equipped with audio and video surveillance equipment, initially approached a group of men and asked them if they had any "hard," or crack cocaine, but the men told him to "go on." Carter then observed a group of several men and one woman standing near an apartment building. He approached the woman, who asked Carter "who [he] was looking for," and he told her that he had unsuccessfully tried to buy "some stuff" from the previous men. The woman then asked Carter what he wanted, and he replied that he was looking for "some hard." The woman then yelled to a group of men, telling them that Carter "was looking for '40 of hard.' " The woman walked away, and Quarterman approached Carter's vehicle. Quarterman pulled a plastic bag out of his pocket, unwrapped it, and displayed crack cocaine to Deputy Carter. Carter explained that the other men were not willing to sell him any drugs and asked Quarterman if he was always present at that particular location, and Quarterman responded affirmatively. Carter then told Quarterman that he wanted a "40," but Quarterman explained that he only had $30 worth of crack cocaine, which he then sold to the officer.[5]

Deputy Carter left the scene and turned over the cocaine and the DVD of the sale to other members of the task force, and they arrested Quarterman several weeks later. While the police were questioning

---

[3] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[4] (Citations omitted.) *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

[5] A forensic chemist from the state crime lab testified at trial that the substance Quarterman sold to Carter tested positive for cocaine.

Quarterman at the police station, Carter entered the room, and Quarterman told him that, "I remember this well. I told you when I — when you got up to me that I didn't have [but] 30. I ain't going to lie." The police also showed Quarterman a still shot from the CD depicting the drug sale, and Quarterman told the police that "it was him."

1. (a) Quarterman argues that the State failed to present sufficient evidence to show that the cocaine sale took place within 1,000 feet of a housing project.

OCGA § 16-13-32.5 (b) makes it

> ... unlawful for any person to manufacture, distribute, dispense, or possess with intent to distribute a controlled substance or marijuana or a counterfeit substance in, on, or within 1,000 feet of any real property of any publicly owned or publicly operated housing project, unless the manufacture, distribution, or dispensing is otherwise allowed by law. For the purposes of this Code section, the term "housing project" means any facilities under the jurisdiction of a housing authority which constitute single or multifamily dwelling units occupied by low and moderate-income families pursuant to Chapter 3 of Title 8.

The statute provides that

> [i]n a prosecution under this Code section, a map produced or reproduced by any municipal or county agency or department for the purpose of depicting the location and boundaries of the area on or within 1,000 feet of the real property of any publicly owned or publicly operated housing project ... or a true copy of the map, shall, if certified as a true copy by the custodian of the record, be admissible and shall constitute prima-facie evidence of the location and boundaries of the area, if the governing body of the municipality or county has approved the map as an official record of the location and boundaries of the area. ... This subsection shall not preclude the prosecution from introducing or relying upon any other evidence or testimony to establish any element of this offense. This subsection shall not preclude the use or admissibility of a map or diagram other than the one which has been approved by the municipality or county.[6]

---

[6] OCGA § 16-13-32.5 (e).

Here, the prosecution did not rely on the statutorily authorized method of using a map to establish that the cocaine sale occurred within 1,000 feet of a public housing project as required by the statute, but rather relied on the testimony of its witnesses to prove the public housing element of the offense. During the State's case-in-chief, Deputy Clark testified that the drug sale took place at the Sunset Homes apartments, which he characterized as "project houses" or "public housing." After the State rested, Quarterman's attorney made a motion for directed verdict, arguing that the State had failed to prove that the location of the purported drug sale was within 1,000 feet of a publicly owned housing project. Before the trial court ruled on the motion, the State asked to recall Jason McKinney, another member of the narcotics task force involved in Quarterman's arrest.

Over Quarterman's objection, McKinney testified that Sunset Homes is "a housing projects [sic] that Cordele Housing Authority runs." McKinney also explained that the Cordele Housing Authority is "[a]n agency that has housing for low income and other stuff. I mean[,] I'm not sure what all takes place to get an apartment there" and that the apartments were publicly owned. McKinney testified during cross-examination as follows:

Q: Who lives in Sunset Homes?

A: I'm not familiar with — I mean it's low income people. I mean that's the only way that *I've ever been told about.*

Q: You know that low income people live there?

A: *That's what I've been told*, yes, sir.[7]

We agree with Quarterman that the State failed to establish the required public housing project element of the offense. In *Collins v. State*,[8] we held that the testimony of the chief of police that a drug sale took place within 1,000 feet " 'from the Housing Authority property line' " was insufficient because there was no testimony that the "property consisted of . . . dwelling units occupied by low and moderate-income families."[9] Similarly, in *Mahone v. State*,[10] we held that testimony that "the cocaine buy took place less than 1,000 feet from a government housing development" was insufficient because there was no testimony that the development "was the property of a municipal housing authority" or "that the housing development was

---

[7] (Emphasis supplied.)

[8] 278 Ga. App. 103 (628 SE2d 148) (2006).

[9] Id. at 105 (1) (b).

[10] 296 Ga. App. 373 (674 SE2d 411) (2009).

occupied by low and moderate-income families."[11]

Here, the only evidence that Sunset Homes was occupied by low and moderate-income families was the testimony of McKinney. But as he clearly admitted on cross-examination, McKinney only knew this because that was "what [he'd] been told." However, "[s]ince ordinary hearsay testimony is not only inadmissible but wholly without probative value, its introduction without objection does not give it any weight or force whatever in establishing a fact."[12] Thus, there was no probative evidence that the cocaine sale took place within 1,000 feet of a public housing project property as required by OCGA § 16-13-32.5 (b). Accordingly, Quarterman's conviction and sentence for violating OCGA § 16-13-32.5 "is not supported by sufficient competent evidence and must be reversed."[13]

(b) Quarterman also enumerates the insufficiency of the evidence with regard to his conviction for selling cocaine. However, he offers no substantive argument to support this portion of the enumeration. Pursuant to Court of Appeals Rule 25 (a) (3) and (c) (2), "an appellant must support enumerations of error with argument and citations of authority, and mere conclusory statements are not the type of meaningful argument contemplated by [the rule]."[14] Thus, Quarterman has abandoned any challenge to the sufficiency of the evidence with regard to his conviction for selling cocaine.[15] Nevertheless, we have reviewed the record and conclude that there was sufficient evidence for a rational trier of fact to find Quarterman guilty beyond a reasonable doubt of selling cocaine.[16]

2. Quarterman also argues that the trial court erred by failing to charge the jury on entrapment, his sole defense. We disagree.

Georgia law provides that "[a] person is not guilty of a crime if, by entrapment, his conduct is induced or solicited by a government officer or employee, or agent of either, for the purpose of obtaining evidence to be used in prosecuting the person for commission of the

---

[11] Id. at 376 (3).

[12] (Punctuation omitted.) *Johnson v. State*, 214 Ga. App. 77, 80-81 (2) (447 SE2d 74) (1994).

[13] Id. at 81 (2). Compare *Henry v. State*, 301 Ga. App. 723, 725-726 (688 SE2d 412) (2009) (evidence was sufficient to establish the public housing project element of OCGA § 16-13-32.5 based on the testimony of a security officer that, based on his seven years of employment by the municipal housing authority and personal familiarity with the complex, he knew that the apartments were "owned by the public housing authority that is used for the purpose of providing dwelling units for low to moderate-income families.").

[14] (Punctuation omitted.) *Thomas v. State*, 255 Ga. App. 261, n. 1 (565 SE2d 130) (2002) (interpreting previous Rule 27 (c) (2)).

[15] See id.

[16] See OCGA § 16-13-30 (b); *Jackson*, 443 U. S. at 318-320 (III) (B); *Jackson v. State*, 223 Ga. App. 207, 208 (3) (477 SE2d 347) (1996).

crime."[17]

> Entrapment requires proof that (1) the idea of the crime originated with the state agent; (2) the agent's undue persuasion, incitement or deceit induced the crime; and (3) the defendant was not predisposed to commit the crime. If all of the elements of an affirmative defense are raised by the evidence, the trial court is required to charge the jury on the defense.[18]

"However, a person is not entrapped simply because he has been given an opportunity to commit a crime[, and] . . . there is no entrapment unless the [State agent] used undue persuasion, incitement, or deceit to induce him to commit a crime he was not predisposed to commit."[19]

Here, Deputy Carter approached a woman and, in response to her inquiry, told her he wanted to buy cocaine. After the woman yelled out to a group of men that Carter wanted to buy "40 of hard," Quarterman approached the unmarked police car and displayed crack cocaine to the undercover officer. There is no evidence that Deputy Carter's undue persuasion, incitement, or deceit induced Quarterman to sell the cocaine to the officer or that Quarterman was not predisposed to commit the crime. Thus, the trial court did not err in failing to charge the jury on entrapment.[20]

3. Based on our holding in Division 1, it is unneccessary to address Quarterman's remaining enumerations of error.

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Ellington, J., concur.*

DECIDED AUGUST 26, 2010.

*Timothy L. Eidson, Lisa M. Palmer*, for appellant.
*Denise D. Fachini, District Attorney, Barbara A. Becraft, Assistant District Attorney*, for appellee.

---

[17] OCGA § 16-3-25.

[18] (Citations and punctuation omitted.) *Lightsey v. State*, 289 Ga. App. 181, 181-182 (1) (656 SE2d 852) (2008).

[19] (Citation omitted.) *Robinson v. State*, 296 Ga. App. 561, 564 (1) (675 SE2d 298) (2009).

[20] See id. at 564 (2); *Mitchell v. State*, 249 Ga. App. 520, 523 (2) (548 SE2d 469) (2001) (a defendant's predisposition to commit a particular crime can be shown by his "[r]eady commission of [the] criminal act"); *Haynes v. State*, 230 Ga. App. 107, 108-109 (2) (495 SE2d 591) (1998) (a confidential informant's request for drugs, without more, does not show undue persuasion, incitement, or deceit).