**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 4, 2013**

# In the Court of Appeals of Georgia

A13A1467. COOPER v. THE STATE.

ELLINGTON, Presiding Judge.

Following a bench trial, a Bulloch County judge found DeMarco Montez Cooper guilty of four counts of selling cocaine, OCGA § 16-13-30 (b) (Counts 1, 4, 7, and 9); five counts of distributing cocaine within 1,000 feet of a public housing project, OCGA § 16-13-32.5 (b) (Counts 2, 5, 8, 10, and 14); three counts of using a communication facility in committing or facilitating the commission of a felony (sale of cocaine), OCGA § 16-13-32.3 (a) (Counts 3, 6, and 11); possession of cocaine with intent to distribute, OCGA § 16-13-30 (b) (Count 12); and possession of a counterfeit controlled substance, OCGA § 16-13-30 (i) (1) (Count 13). Cooper appeals from the order denying his motion for a new trial, challenging the sufficiency of the evidence and contending that the trial court erred in conducting a bench trial

without first determining whether he had waived his right to a jury trial. Cooper also moved this Court to remand his case so that he could pursue a claim of ineffective assistance of trial counsel. For the following reasons, we vacate the judgments of conviction and remand to the trial court for proceedings consistent with this opinion.

1. Cooper contends that the trial court erred in conducting a bench trial without first determining that he voluntarily, knowingly, and intelligently waived his right to a jury trial.

> A criminal defendant must personally and intelligently participate in the waiver of the constitutional right to a trial by jury. When the purported waiver of this right is questioned, the State bears the burden of showing that the waiver was made both intelligently and knowingly, either (1) by showing on the record that the defendant was cognizant of the right being waived; or (2) by filling a silent or incomplete record through the use of extrinsic evidence which affirmatively shows that the waiver was knowingly and voluntarily made.

(Citation and punctuation omitted.) *Whitaker v. State*, 256 Ga. App. 436, 439 (2) (568 SE2d 594) (2002). "The question of whether a defendant is capable or incapable of making a knowing and intelligent waiver of his rights is to be answered by the trial judge and will be accepted by this court unless such determination is clearly erroneous." (Citations and punctuation omitted.) Id. In this case, Cooper questions

2

the validity of the waiver for the first time on appeal. "Generally, claims of error not objected to in the trial court may not be raised for the first time on appeal, except for certain constitutional issues, among which is whether the defendant waived his constitutional right to a jury trial." (Footnote omitted.) *Whitaker v. State*, 244 Ga. App. 241, 243 (4) (568 SE2d 594) (2002).

Because the State has not yet had the opportunity to rebut Cooper's claim with extrinsic evidence showing that he intelligently and knowingly waived his right to a jury trial, such as the testimony of or an affidavit from Cooper's attorney, the record before us is incomplete. See *Jackson v. State*, 253 Ga. App. 559, 560 (560 SE2d 62) (2002). Cooper's convictions are hereby vacated, and the case is remanded to the trial court for an evidentiary hearing on this issue. See *Rosser v. State*, 312 Ga. App. 240, 241 (2) (718 SE2d 310) (2011); *Lawal v. State*, 201 Ga. App. 797, 798 (2) (412 SE2d 864) (1991). In the event the trial court determines from the evidence adduced at this hearing that Cooper did make such a waiver and that he personally participated in the decision, then the convictions and sentences may be reinstated, to the extent not otherwise barred,[1] and Cooper will be entitled to file a new appeal directed to this

---

[1] See Division 2, infra.

issue alone. *Whitaker v. State*, 244 Ga. App. at 244 (4); *Lawal v. State*, 201 Ga. App. at 798 (2).

2. In his remaining claims of error, Cooper challenges the sufficiency of the evidence supporting his convictions. Although we have vacated his convictions for the reasons explained in Division 1, supra, we address Cooper's sufficiency argument because the trial court would not be authorized to reinstate any conviction the State failed to prove.[2]

When an appellate court reviews the sufficiency of the evidence,

> the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution.

---

[2] See *Whitaker v. State*, 244 Ga. App. 242 (1). See, generally, *Williams v. State*, 258 Ga. 305 (1) (369 SE2d 232) (1988) ("The primary purpose underlying the Double Jeopardy Clause is to prohibit the retrial of a criminal defendant where the prosecution has, at the initial trial, produced insufficient evidence to sustain a conviction.") (citations omitted).

4

(Citation, footnote, and emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781) (61 LE2d 560) (1979). So viewed, the record reveals the following.

An officer with the Statesboro Police Department used a confidential informant to make four controlled buys of cocaine from "Tez," who resided in apartment H4 of the Fox Ridge Apartment complex, a low-income housing project in Bulloch County. The police recorded the conversations between the informant and the seller, including the calls to arrange the sales of cocaine and the conversations that occurred during the hand-to-hand transactions, and the State introduced the recordings into evidence. After obtaining the suspected cocaine, the police determined that Cooper resided in apartment H4 from a list maintained by the apartment complex. Thereafter, the police obtained a search warrant, searched the apartment, and found additional suspected cocaine, a single pill of suspected MDMA[3], and the currency used in the controlled buys. The informant told the police, and he later testified at trial, that Cooper sold the cocaine to him. Cooper admitted that he used cocaine and that he had possessed the cocaine recovered from the informant and his apartment, but he denied that he had sold it to the informant. He testified that he and the informant, who is his cousin,

[3]See footnote 6, infra.

5

possessed the cocaine jointly and would "get high together." Finally, a forensic scientist with the Georgia Bureau of Investigation testified that the drugs Cooper sold to the informant tested positive for cocaine and that the drugs recovered from Cooper's apartment tested positive for cocaine, except for the pill, which tested positive for piperazine.

(a) Cooper contends that the evidence adduced was insufficient to support his convictions because the state relied on the hearsay testimony of a forensic scientist who did not personally conduct the chemical tests that identified the drugs Cooper sold or possessed. Cooper argues that admitting the "surrogate testimony" of the forensic scientist in this case violated his right to confront the witnesses against him.[4] However, even assuming that the forensic chemist's testimony was inadmissible, the State nevertheless submitted sufficient evidence establishing that the drugs recovered, with the exception of the pill, constituted cocaine.

Both the informant and Cooper made admissions to the police and during their testimony at trial that the white powdery substance sold by Cooper or recovered from

___

[4] See *Disharoon v. State*, 291 Ga. 45 (727 SE2d 465) (2012) ("'Surrogate testimony' of a 'scientist who did not sign a certification or perform or observe the test reported in the certification violates the Confrontation Clause.'" (citation omitted); *Leger v. State*, 291 Ga. 584, 592-593 (5) (732 SE2d 53) (2012) (accord); *Estrada v. State*, 319 Ga. App. 762, 765-766 (3) (738 SE2d 344) (2013) (accord).

6

Cooper's apartment was cocaine, and Cooper interposed no objection to this testimony. The testimony of the police, the informant, and Cooper was sufficient to allow a rational trier of fact to find beyond a reasonable doubt that the substance sold or possessed by Cooper, as alleged in Counts 1, 3, 4, 6, 7, 9, 11, and 12, was cocaine. See, e.g., *Willingham v. State*, 296 Ga. App. 89, 90-91 (673 SE2d 606) (2009) (expert testimony as to the chemical composition of the contraband is not always required; so long as the State presents, without objection, the testimony by one with personal knowledge establishing that the substance is what the state claims, then the evidence is sufficient); *Burroughs v. State*, 190 Ga. App. 467, 470 (1) (b) (379 SE2d 175) (1989) (accord). See also *Gooch v. State*, 249 Ga. App. 643, 645 (1) (549 SE2d 724) (2001) (witnesses who were involved in the drug transaction and who had used methamphetamine on multiple prior occasions testified that the substance at issue was methamphetamine).

(b) However, the evidence is insufficient to establish that Cooper possessed a counterfeit drug, as alleged in Count 13 of the indictment.[5]

---

[5] Cooper was indicted in Count 13 for possessing "MDMA," which was not defined in the indictment with reference to any specific chemical formula. Before trial, the court allowed the State to amend the indictment (without objection) to reflect that it was pursuing, with reference to Count 13, the "lesser-included" offense of felony possession of a counterfeit drug. We do not address whether the State's

OCGA § 16-13-30 (i) (1) provides that "it is unlawful for any person to possess . . . a counterfeit substance." The definition of a "counterfeit substance" applicable here is "[a] controlled substance or [a] noncontrolled substance, which is held out to be a controlled substance or marijuana, whether in a container or not which does not bear a label which accurately or truthfully identifies the substance contained therein," or "[a]ny substance, whether in a container or not, which bears a label falsely identifying the contents as a controlled substance." OCGA § 16-13-21 (6) (B), (C).

The State presented the testimony of an officer who opined that the pill found in Cooper's apartment appeared to be suspected MDMA. The State's forensic chemist testified that the pill contained piperazine. The State, however, failed to adduce any evidence establishing that the pill bore markings that misidentified or misrepresented it as being MDMA.[6] Because the record contains no evidence from which the

amendment to the indictment was valid because Cooper has not alleged such as error.

[6] MDMA is a Schedule I controlled substance denominated "3, 4-Methylenedioxymethamphetamine." OCGA § 16-13-25 (3) (Z). MDMA is often referred to as "ecstacy." See *Jackson v. State*, 314 Ga. App. 272 (724 SE2d 9) (2012). Piperazine is a Schedule I controlled substance, see OCGA § 16-13-25 (8), similar to ecstacy, sometimes referred to as "synthetic ecstacy," and which has been confused with or treated as ecstacy by law enforcement. See *State v. Rogers*, 319 Ga. App. 834, 835, n. 3 (738 SE2d 667) (2013) ("[The officer] visually identified the pills as ecstasy, the crime lab determined that the pills were actually 1-(3-trifluoromethylphenyl) piperazine, which is a controlled substance similar to

8

factfinder could conclude that the pill was a counterfeit controlled substance as defined in the statute, this conviction is not supported by sufficient evidence.

(c) Cooper contends the evidence adduced was insufficient to establish that he sold drugs within 1,000 feet of a public housing project. We agree. The State failed to offer any evidence establishing that the Fox Ridge Apartment complex was owned or operated by a public housing authority, an essential element of the offense.[7] *Quarterman v. State*, 305 Ga. App. 686, 688-690 (1) (a) (700 SE2d 674) (2010) (the State failed to establish the required public housing project element of the offense).

---

ecstasy."); *Farley v. State*, 317 Ga. App. 628 (732 SE2d 131) (2012) (Undercover agents purchased purported "ecstacy" pills which subsequently tested positive for the presence of piperazine.).

[7] OCGA § 16-13-32.5 (b) provides that

[i]t shall be unlawful for any person to manufacture, distribute, dispense, or possess with intent to distribute a controlled substance or marijuana or a counterfeit substance in, on, or within 1,000 feet of any real property of any publicly owned or publicly operated housing project, unless the manufacture, distribution, or dispensing is otherwise allowed by law. For the purposes of this Code section, the term "housing project" means any facilities under the jurisdiction of a housing authority which constitute single or multifamily dwelling units occupied by low and moderate-income families pursuant to Chapter 3 of Title 8.

9

Consequently, Cooper's convictions on Counts 2, 5, 8, 10, and 14 are not supported by sufficient evidence.

3. Cooper's current appellate counsel filed with this Court a "Motion for Remand Without Prejudice" to "allow development of the record regarding" a claim of ineffective assistance of trial counsel.[8] Because we are remanding this case for the reasons explained in Division 1, supra, the motion is hereby denied as moot.

It is well settled that "a defendant must raise all allegations of ineffective assistance of counsel at the earliest practicable moment, and any allegation not raised [at that time] is deemed waived." *Billings v. State*, 293 Ga. 99, 102 (2) (745 SE2d 583) (2013). See also *Simmons v. State*, 281 Ga. 437, 438 (2) (637 SE2d 709) (2006) (accord); *Smith v. State*, 255 Ga. 654, 656 (3) (341 SE2d 5) (1986) (accord).

The record shows that Cooper's trial counsel filed a motion for new trial. After the trial court appointed new attorneys to represent Cooper in post-conviction proceedings, his new appellate counsel did not raise a claim of ineffective assistance

---

[8] We note that Cooper has not asserted a claim of ineffective assistance of trial counsel in his appellate brief nor has he explained how his trial counsel was allegedly deficient in his motion to remand. In order to address a motion to remand on the ground of ineffective assistance of counsel, it is imperative that we know the basis for the claim so that we may assess whether the claim is one that involves matters outside of the record and, thus, is a claim that should be remanded for further proceedings. See *Wilson v. State*, 277 Ga. 195, 199-200 (586 SE2d 669) (2003).

of trial counsel either in an amendment to Cooper's motion for new trial or at the hearing on that motion. See *Bailey v. State*, 264 Ga. 300 (443 SE2d 836) (1994) (New counsel could have amended an existing motion for a new trial to raise a claim of ineffective assistance of counsel, but because he elected not to do so, the claim was waived.); *Alford v. State*, 293 Ga. App. 512, 515-516 (4) (667 SE2d 680) (2008) (accord).

We note that, although Cooper's trial counsel and his appellate counsel were each public defenders, they were employed by the Office of the Public Defender for two separate judicial circuits, the Ogeechee Judicial Circuit and the Augusta Judicial Circuit, respectively. Accordingly, this is not a case in which Cooper's waiver may be excused by the failure of a succession of attorneys from the same public defender's office to raise the issue of the ineffective assistance of trial counsel. Cf. *Ryan v. Thomas*, 261 Ga. 661, 662 (409 SE2d 507) (1991) ("[A]ttorneys in a public defender's office are to be treated as members of a law firm for the purposes of raising claims of ineffective assistance of counsel. As such[,] different attorneys from the same public defender's office are not to be considered 'new' counsel for the purpose of raising ineffective assistance claims . . . . Therefore, a defendant's right to raise such a claim may not be barred by the failure of a succession of attorneys

11

from the same public defender's office to raise it.").[9] Consequently, although this case is remanded for other reasons, the trial court is not required to give Cooper an opportunity to develop evidence regarding any belatedly-asserted claim of ineffective assistance of trial counsel. *Billings v. State*, 293 Ga. at 102-103 (2); *Bailey v. State*, 264 Ga. at 300.

*Judgment vacated and case remanded with direction. Phipps, C. J., and Branch, J., concur.*

---

[9] "[C]ircuit public defenders working in the circuit public defender office *of the same judicial circuit* are akin to lawyers working in the same unit of a legal services organization and each judicial circuit's public defender's office is a 'firm' as the term is used [in Rule 1.10 (a), concerning conflicts of interest.]" (Footnote omitted.) *In re Formal Advisory Opinion 10-1*, 293 Ga. 397, 398 (1) (744 SE2d 798) (2013) See also *Hung v. State*, 282 Ga. 684 (2) (653 SE2d 48) (2007) (attorney who filed motion for new trial was not considered to be "new" counsel for the purpose of an ineffective assistance of counsel claim where he and trial counsel were from the same public defender's office); *Kennebrew v. State*, 267 Ga. 400, 402 (2) (480 SE2d 1) (1996) (appellate counsel who was from the same public defender office as appellant's trial lawyer could not represent appellant on appeal where appellant had an ineffective assistance of counsel claim).